## 𝔖taunton.

## L. G. CORVIN V. COMMONWEALTH.

### September 22, 1921.

### Absent, Burks, J.

1. DIVORCE—*Foreign Judgments and Decrees—Full Faith and Credit Clause of the Federal Constitution.*—In a divorce case, where the matrimonial domicile was in one State and the divorce is granted in another State at the suit of one consort who has acquired or who has claimed to acquire a *bona fide* domicile in such other State, a decree there obtained without personal service of process and without an appearance of the defendant is not binding upon the courts of the State of the original matrimonial domicile under the full faith and credit clause ·of the federal Constitution.

2. DIVORCE—*Foreign Judgments and Decrees—Full Faith and Credit Clause of the Federal Constitution.*—Where a divorce suit is properly brought in the State of the matrimonial domicile of the parties against a consort who has left that State and gone to another, the suit may be matured against the absent party by constructive service of process, and courts of the State in which the parties had their matrimonial domicile have jurisdiction to enter a decree in conformity with the laws of that State, which must be given full faith and credit in the other States of the Union under the federal Constitution.

3. DIVORCE—*Foreign Judgments and Decrees—Comity—Decree Based Upon Fraud.*—A divorce obtained in a foreign jurisdiction which is based upon fraud, will not be recognized as a matter of comity when questioned in another jurisdiction. The decree is without extra-territorial effect, and the judgment will be treated as void in the courts of a sister State.

4. DIVORCE—*Foreign Judgments and Decrees—Comity—Decree Based Upon Fraud—Case at Bar.*—In the instant case, a prosecution for bigamy, where accused pleaded a divorce obtained in West Virginia as a bar to the prosecution, the matrimonial domicile being in Virginia, if the accused did not go to West Virginia with the determination to make it his legal domicile, or if he

went there merely for the purpose of obtaining a divorce, intending to remain no longer than was necessary to accomplish his purpose, or if the divorce was obtained by fraud, the decree of the West Virginia court is void, and the accused in marrying another woman and thereafter cohabiting with her in this State, while his former wife still was living, is guilty of bigamy.

5. BIGAMY—*Cohabitation Under an Invalid Marriage.*—By express statutory provision (Code of 1919, section 4538) the crime of bigamy is complete in this State if under an invalid marriage in another State there is thereafter cohabitation under such marriage in this State.

6. DIVORCE—*Bigamy—Validity of Foreign Divorce—Instructions—Case at Bar.*—In the instant case, a prosecution for bigamy, where accused pleaded a divorce obtained in West Virginia as a bar to the prosecution, the matrimonial domicile being in Virginia, the trial court correctly referred the question to the jury by an instruction which authorized them to disregard the West Virginia divorce decree if they believed beyond a reasonable doubt that the accused practiced fraud in obtaining the divorce in West Virginia which was relied on by him, by offering false testimony for the purpose of obtaining it, the other requisites for conviction having been either proved or admitted.

7. DIVORCE—*Foreign Judgments and Decrees—Fraudulent Decree.*—A bill for divorce in West Virginia alleged that the wife had deserted her husband without cause, suppressing the material fact that the wife had been driven from her home by the unpardonable conduct of the husband. The bill contained a false statement of the date of the separation, whereas if it had stated the true date, it would have been demurrable because it would have appeared therefrom that at the time when it was filed, no ground for divorce existed under the West Virginia statute. Complainant and his only witness suppressed the truth by deceptive and ambiguous testimony.

*Held:* That as there was no appearance by the defendant nor service of process upon her, the decree should be held to be a nullity everywhere.

8. INDICTMENT AND INFORMATION—*Negativing Exceptions—Bigamy —Negativing Prior Divorce.*—In a prosecution for bigamy, it is not necessary that the indictment should negative the provisions of section 4539 of the Code of 1919, as this section constitutes no part of the description of the offense, but is disconnected with the statutory description of the crime and only affords the accused certain grounds of defense, among them a divorce from the bond of a previous marriage. An indictment must negative the exceptions in the statute under which it is brought but not the provisos.

9.  BIGAMY—*Evidence—Witnesses—Divorce Decree.*—In a prosecution for bigamy the Commonwealth introduced a witness to show that accused admitted that he had been married in Maryland. Upon cross-examination the witness testified that accused claimed to have been divorced in West Virginia and showed him a copy of the divorce decree. The accused then attempted to put a copy of the divorce decree in evidence. The court having permitted the entire conversation to be detailed by the witness, declined to allow the paper to be introduced at that stage of the proceeding, unless the accused would adopt the witness as his own for the purpose of introducing the decree.

   *Held:* That this constituted no ground for reversal, the paper being afterwards introduced by the accused.

10.  BIGAMY—*Evidence—Divorce Proceedings in Another State—Fraud in Obtaining Decree.*—In order to test the good faith of defendant in a bigamy prosecution and his motives in connection with the divorce proceedings in another State relied upon by accused as a defense, it was proper to introduce the material facts which culminated in that suit, as well as his conduct immediately thereafter, so as to determine whether the decree had been obtained in good faith or by deceit and fraud.

11.  BIGAMY—*Instructions—Presumption from Failure of Defendant and Bigamous Wife to Testify.*—In a prosecution for bigamy accused assigned as error the refusal of the trial court to give an instruction to the effect that the failure of the defendant or his alleged bigamous wife to testify created no presumption against the defendant. Accused claimed that this instruction should have been given under the Code of 1919, section 6211, permitting husband and wife in criminal cases to testify in behalf of each other, and providing that their failure so to testify should create no presumption against the accused.

   *Held:* That the action of the court was proper, as this section applies only where the existence of the relation of husband and wife appears, and the vital question in the instant case was whether or not the alleged bigamous wife was or was not the wife of the accused.

Error to a judgment of the Circuit Court of Wythe county.

*Affirmed.*

The opinion states the case.

*W. S. Poage, S. B. Campbell* and *E. Lee Trinkle,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General; Leon M. Bazile, Second Assistant Attorney General,* and *H. M. Heuser,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The accused has been convicted of the crime of bigamy and is here alleging that several errors were committed in the course of the trial.

The fact of his first marriage to Augusta Sult, as well as the fact of his second marriage while she was still living to Zollie Umberger Sult, the divorced wife of L. A. Sult, the brother of Augusta Sult, are both conceded. The defense is based upon the fact that the accused first obtained a decree of divorce from Augusta Sult Corvin, in Barbour county, West Virginia, and he relies upon that decree as a bar to this prosecution.

The facts leading up to the prosecution, all of which are pertinent for the consideration of the decisive question to be determined, may be thus stated: He was first married in 1903 in Wythe county, Virginia, and lived there with his wife for a number of years, but they separated on December 3, 1916. The causes of the separation were his apparent interest in and affection for one Zollie Umberger Sult (she being then the wife of L. A. Sult, his own wife's brother), which conduct if not criminal was so notorious as to lead to a breach of intimate relations with his wife, followed by separation and ultimately by a divorce in Virginia of Zollie Umberger Sult from her husband, L. A. Sult, upon the ground of her intimacy with the accused. The uncontradicted testimony of Augusta Corvin was that she was a

good and faithful wife, that she had to leave her husband because of the relationship existing between him and Mrs. Sult, and that when she remonstrated with him, he told her that it was none of her business, and finally that when he got certain business fixed up he and Zollie were going to leave; that he told her (his wife) that either he or she must leave, and that if she did not leave him she would not stay there very long; and that thereupon she obtained refuge at Simon Umberger's house on December 3, 1916. It also appears in the evidence that about the time of the separation, the accused saw Simon Umberger, the father of Zollie Umberger Sult, and requested him to advise his wife, Augusta, to sue him for a divorce, and at the same time to advise Sult to sue his wife, Zollie Umberger Sult, for a divorce, so that he (the accused) and Zollie Umberger Sult might marry each other, and at about the same time he also approached Mrs. Walter Umberger, a daughter-in-law of the same Simon Umberger, and made a proposition to give his wife certain household property and $400 in money if she would get a divorce from him, upon condition, however, that L. A. Sult should get a divorce from his wife, accompanied by the statement that he would not pay one cent of the amount unless Zollie was divorced from her husband, and these two witnesses also testify that the accused asked them at that time if they would not rather have him live in Wythe county with Zollie Umberger Sult than to take her away from there and not marry her.

Thereafter, on October 15, 1917, the accused was indicted on the charge of unlawfully, and without just cause, deserting, and wilfully neglecting and refusing to provide for the support and maintenance of his wife, Augusta Corvin, she being then in destitute and necessitous circumstances. He made his defense, on October 29th, and was found guilty as charged in the indictment, and his punishment therefor was fixed at ninety days on the State convict road force at

hard labor and a fine of $250. After the discharge of the jury the trial court, with the consent of the accused, ordered him to pay to the clerk of the court for the support of his wife the sum of $12.50 per month, payable on the first day of each month for the period of one year, and released him from custody on probation during that period, upon condition that he enter into a recognizance, with surety, in the penalty of $500 conditioned for his appearance at court whenever so ordered within the year, and also to appear on the first day of the October term, 1918.

The accused did not testify in this case, but it otherwise appears that he went to the city of Washington and worked on the street car line immediately after he left Virginia; that he there saw Zollie Umberger Sult, who was clerking in a store in that city in the fall of 1917. Thereafter, about March, 1918, he was employed as a farm laborer in Barbour county, West Virginia, by W. H. Wentz, and worked there until late in the fall of 1919; that Zollie Umberger Sult visited the Wentz place two or three times while the accused was there, and was finally employed by Wentz to go to the farm to look after his mother, and that she and the accused both boarded and slept in the Wentz home there.

On May 19, 1919, the accused instituted his suit for divorce against his wife, Augusta Corvin, alleging that he was then and for more than one year had been a resident of the State of West Virginia; that his wife had wilfully deserted him without any just or reasonable cause therefor, and twice in his bill fixes the date of such desertion as December 3, 1915, the truth being that the separation occurred a year later, on December 3, 1916. He proceeded to mature his case by order of publication, alleging that he was informed that his wife, the defendant, was a resident of the State of Virginia. He undertook to establish the facts alleged by the evidence of himself and Zollie Umberger Sult.

The West Virginia statute, West Virginia Code, section

3640, provides among other things that a divorce from the bond of matrimony may be decreed "to the party abandoned," "where either party wilfully abandons or deserts the other for three years."

It appears then that at the time his suit was instituted the date of separation or abandonment was misstated in the bill. We think it may be fairly inferred that this was not a mere inadvertence because of these circumstances: The date fixed for the taking of depositions was November 21, 1919, and on that day no witnesses appeared, so that the commissioner continued the proceedings until December 26, 1919, and when examined neither of the witnesses corrected the erroneous statement appearing in the bill, though they carefully refrained from expressly repeating the falsehood, and merely testified that the desertion or separation had continued for more than three years without stating when the period began. One answer of the accused was that they had "been separated three years past." At the time his testimony was given the separation had continued three years but his lack of frankness is apparent when it is observed that he failed to give the date of the separation, which, if he had given truly, would have disclosed that at the time of institution of the suit the court was without jurisdiction to grant the relief sought. Neither in the bill nor in the testimony was the attention of the West Virginia court directed to the true cause of the separation. No allusion whatever was made to these material and significant facts, viz., that the accused had in Virginia been adjudged the party at fault, guilty of an inexcusable desertion of his wife, required to contribute to her support, that he was on probation and had been required to enter into a recognizance for his appearance before the Virginia court.

It is claimed for the accused that the divorce decree, thus obtained in West Virginia, creates a perfect defense in this prosecution, both under the full faith and credit clause of

the federal Constitution and because of the comity which should exist between the States and the respect due by one State to the judicial proceedings of another. This introduces a question about which much has been written, and has been raised many times and under varying circumstances. We do not think that we can add anything of value to this general discussion, and hence shall confine ourselves to the precise facts of this case.

[1, 2] It seems to be settled since the case of *Haddock* v. *Haddock,* 201 U. S. 562, 50 L. Ed. 867, 26 Sup. Ct. 525, 5 Ann. Cas. 1, that in cases like this, where the matrimonial domicile was in one State and the divorce is granted in another State at the suit of one consort who has acquired or who has claimed to have acquired a *bona fide* domicile in such other State, a decree there obtained without personal service of process and without an appearance of the defendant is not binding upon the courts of the State of the original matrimonial domicile under the federal Constitution. It is otherwise, however, where the suit is properly brought in the State of the matrimonial domicile of the parties against the consort who has left that State and gone to another. Under such circumstances the suit may be matured against the absent party by constructive service of process, and courts of the State in which the parties had their matrimonial domicile have jurisdiction to enter a decree in conformity with the laws of that State, which must be given full faith and credit in the other States of the Union under the federal Constitution. *Atherton* v. *Atherton,* 181 U. S. 155, 45 L. Ed. 794, 21 Sup. Ct. Rep. 544; *Thompson* v. *Thompson,* 226 U. S. 551, 57 L. Ed. 351, 33 Sup. Ct. 129. So that if this divorce is a bar to this prosecution, it can only be because of the respect which this State will pay to the decree as a matter of comity.

[3, 4] It seems to be always conceded or announced in such cases that a divorce obtained in a foreign jurisdiction which

is based upon fraud will not be recognized when questioned in another jurisdiction. Paraphrasing the language used in *Thompson* v. *State,* 28 Ala. 21, it may be said that if the accused did not go to West Virginia with the determination to make it his legal domicile, or if he went there merely for the purpose of obtaining a divorce, intending to remain no longer than was necessary to accomplish his purpose, or if the divorce was obtained by fraud, the decree of the West Virginia court is void, and the accused in marrying another woman and thereafter cohabiting with her in this State, while his former wife still was living, is guilty of bigamy.

[5] By express provision of our statute (Code 1919, sec. 4538), the crime is complete in this State if under an invalid marriage in another State there shall thereafter be cohabitation under such marriage in this State.

In *Magowan* v. *Magowan,* 57 N. J. Eq. 322, 42 Atl. 330, 73 Am. St. Rep. 645, a divorce in Oklahoma was held invalid in New Jersey, this being said: "Where the plaintiff in a suit for divorce is required by statute to have become a *bona fide* resident of the State in which his suit is brought for a fixed period of time in order to enable him to maintain his suit, the ascertainment by the court of the fact of such residence necessarily precedes a consideration of the merits of the case, and the determination of that question by the court is final not only in the courts of that State but in every other jurisdiction where the validity of the judgment comes in question, unless such determination has been procured by fraud. When, however, the adjudication has been procured by fraud, it is without extra-territorial effect, and the judgment will be treated as void in the courts of a sister State." The court there also held that it was not precluded from inquiry into whether the party who obtained the divorce was in fact a *bona fide* resident of New Jersey at the time he instituted his suit for divorce in Oklahoma.

42

In *Dumont* v. *Dumont* (N. J. Ch.), 45 Atl. 107, the substantial facts were these: The husband was a diamond setter in New York, and on being accused by his wife of undue intimacy with another woman, refused to live with her any longer. He offered to supply her with evidence upon which she could secure a divorce from him, which she declined, and begged him not to desert her. He then left her, went to Dakota, rented a room in a small town where there was no demand for diamond setting, set up a bench and a chair, sent out circulars, and pretended to be in the diamond-setting business, but his work came chiefly from New York. After the three months' residence, which was required by statute in Dakota, he sued his wife for divorce, and on the trial swore that she had deserted him for a year, that he came to Dakota to establish himself in business, and intended to remain there forever. After securing his divorce by default he immediately returned to New York, resumed his old employment, and married the woman with whom he had previously been intimate. It was held by the Court of Chancery of New Jersey that he was never domiciled in Dakota, that his divorce was procured by fraud on the court, and was, therefore, void, and hence was no defense to a suit by his wife for divorce on the ground of adultery in New Jersey.

In *Goolsby* v. *State*, 24 Ga. App. 377, 100 S. E. 788, a conviction of bigamy was sustained in Georgia, although the accused there had obtained a divorce in Alabama against his wife who at the time of the institution of that suit was still a resident of Georgia, having obtained jurisdiction in Alabama by order of publication. The conviction was sustained because the court concluded that the evidence justified the jury in finding that the accused was a resident of the State of Georgia at the time he instituted his suit in the State of Alabama.

In *State* v. *Herron*, 175 N. C. 754, 94 S. E. 698, a conviction of bigamy is sustained notwithstanding a decree of divorce entered in Georgia upon constructive service of process upon the wife who remained in North Carolina, and upon the ground of the bad faith and fraud of the accused in attempting to acquire a domicile in Georgia.

In *Dunham* v. *Dunham*, 162 Ill. 589, 44 N. E. 841, 35 L. R. A. 70, it is held that a wife who, upon separation from her husband, goes into another State for the purpose of obtaining a divorce and brings a suit without disclosing the fact that a suit is pending in the State of her former residence, involving the same matters alleged as a cause of divorce, and in which she has appeared, is guilty of such a fraud as to invalidate a decree of divorce obtained by her, although the pendency of the prior suit could not have been pleaded in abatement or bar of her divorce suit.

The general subject is discussed elaborately in notes in 59 L. R. A. 135, 18 L. R. A. (N. S.) 647, 3 R. C. L. 798, 9 R. C. L. 508, *et seq.*

[6] Bearing the facts of this case in mind, and applying the rule that fraud vitiates judicial proceedings, even where they appear to be regular in form, it seems to us that there can be no doubt in this case that the trial judge correctly referred the question to the jury by an instruction which authorized them to disregard the West Virginia divorce decree if they believed beyond a reasonable doubt that the accused practiced fraud in obtaining the divorce in West Virginia which is relied on by him, by offering false testimony for the purpose of obtaining it, the other requisites for conviction having been either proved or admitted.

This instruction can be justified, even if it be conceded that the accused acquired a *bona fide* residence in West Virginia, though as to this the evidence is weak and inconclusive when all of the circumstances are considered, for it must be remembered that very soon after he obtained the

decree in West Virginia he married the woman with whom he had been so long apparently intimate, and returned with her to Wythe county to live. The decree was entered in January, 1920, the date of his marriage in Maryland is not given, but they together returned to Wythe county in the spring of 1920. There is much here, then, in his conduct to justify the conclusion that he had no other reason for going to West Virginia than the securing of the divorce there, which he could not obtain here, and that he always intended to return to Virginia. His mother had property in Wythe county, Virginia, and had frequently urged him to return, and he had neither property interest in West Virginia nor any prospective property interest there such as he had in Virginia.

[7] Waiving this inquiry, however, can there be any doubt as to the fraudulent character of the West Virginia proceeding? The bill suppressed the material fact that so far from its being true that his wife had deserted him without cause (and he relied solely on this ground for the divorce in West Virginia), taking the most favorable view of the evidence, he acquiesced in the separation, while the additional truth is, for his wife's testimony in this respect is uncontradicted, that she was driven from home by him pursuant to his avowed and active efforts to force her to sue him for divorce because of his own default. He sought and obtained the decree by a false statement of the date of the separation, while if he had stated the true date, his bill would have been demurrable because it would have appeared therefrom that at that time when it was filed, no ground for divorce existed under the West Virginia statute. In the depositions of himself and his only witness, they suppressed the truth by deceptive and ambiguous testimony. This divorce decree, thus based upon deceit and fraud, would doubtless be annulled by the courts of West Virginia upon proper presentation of the facts here appearing, and in a

case like this where there was no appearance by the defendant nor service of process upon her, should be held to be a nullity everywhere.   The fraud here then is so patent and palpable that whatever difference of view there may be as to many questions which can be raised as to the extraterritorial effect of decrees of courts where the jurisdiction over the defendant is based solely upon constructive service of process, we think that no court would accord any respect to this decree.

[8] Among the errors as to procedure which are assigned is, that the court erred in overruling the demurrer to the indictment upon the ground that it should have negatived the exception contained in Code 1919, sec. 4539.  The crime of bigamy is completely described in section 4538, and section 4539 does not constitute a part of the description of the offense, but is disconnected with the statutory description of the crime and only affords the accused certain grounds of defense—among them a divorce from the bond of a previous marriage.  This question has been recently considered and decided by this court adversely to that contention in the case of *Sickel* v. *Commonwealth*, 124 Va. 821, 97 S. E. 783, 99 S. E. 678, and this we believe accords with the general rule in other jurisdictions.  7 C. J. 1166, and cases cited; 3 R. C. L. 807.

[9] There is an exception also growing out of these circumstances.   The Commonwealth introduced a witness to show that the accused admitted that he had been married in Maryland.   Upon cross-examination the witness was questioned as to the alleged divorce in West Virginia, and having testified that the accused so claimed, said that he showed him a copy of the divorce decree.   The accused then attempted to put a copy of the divorce decree in evidence, but the Commonwealth objected to the introduction of the document.   The court having permitted the entire conversation to be detailed by the witness, declined to allow the

paper to be introduced at that stage of the proceeding, unless the accused would adopt the witness as his own for the purpose of introducing the decree.   He declined to do this, and excepted to the ruling.

We find no ground for reversal in this action of the court. The divorce was clearly a matter of defense, the burden of proving which was upon the defendant, and if he desired to prove it at that stage of the prosecution, he should have accepted the court's suggestion.   This identical paper was afterwards introduced by the accused, and he suffered no wrong or injury because of the circumstance of which he complains.

The other objections to the testimony have been disposed of by what we have previously said.

[10] In order to test the good faith of the defendant and his motives in connection with the divorce proceedings in West Virginia, it was proper to introduce the material facts referred to, which culminated in that suit, as well as his conduct immediately thereafter so as to determine whether the decree had been obtained in good faith or by deceit and fraud.

[11] The basis of another assignment of error is the refusal of the court to give this instruction, offered by the accused: "The court instructs the jury that the failure of the defendant, Lucian Corvin, or of Zollie Corvin to testify in this case, creates no presumption against the defendant, and is not to be considered by the jury in arriving at their verdict."   It is claimed that this should have been given because of Code 1919, section 6211, which provides that husband and wife in criminal cases may be allowed to testify in behalf of each other, and that the failure of either so to testify "shall create no presumption against the accused, nor be the subject of any comment before the court or jury by the prosecuting attorney."   Manifestly the action of the court was proper.   The section relied upon relates primarily

to the competency of witnesses, and applies where the existence of the relation of husband and wife appears. It has no reference to a state of facts such as were developed upon this trial. The vital question here at issue was whether or not Zollie Umberger Sult was the wife of the accused. The court could only have given the instruction upon the assumption that she was his wife, and this would have invaded the province of the jury, for that was the very question which they had to determine: Neither the accused nor his alleged wife testified, and the jury were properly instructed that his failure to testify created no presumption against him and was not to be considered by the jury in arriving at their verdict. This was all that he was entitled to.

We find no ground for reversal in the record. The divorce decree upon which the accused relied was obtained by fraud and deceit, and under the testimony here adduced the jury could not have properly found otherwise. In this changing world human nature changes little, if any, and those who persist in defying public sentiment by violating the written law when it is based upon reason and supported by sound public policy are as sure to receive a punishment adjudged to fit the crime today as was Zimri on that day long ago when he defiantly brought a Midianitish woman into the Hebrew camp, in the sight of Moses and the congregation before the door of the tabernacle.

*Affirmed.*