FINDINGS OF FACT AND CONCLUSIONS OF LAW
LUHRING, J.
This matter came on for hearing on the cross-bill and the reply thereto. The defendant by his cross-bill seeks an annulment of the marriage on the ground that the marriage was contracted while- the plaintiff had a former husband living, and that said former marriage had not been lawfully dissolved.
The plaintiff, Teresa H. Sears, and the defendant and cross-complainant, John R. Sears, were married in the City of Washington on the 12th day of November, 1927. They lived and cohabited together as husband and wife until the 10th day of March, 1934, when they separated. They have not lived together since that day. No children were born of this marriage. The plaintiff filed her bill for limited *129 divorce on the ground of cruelty in this court on the 18th day of May, 1934. The defendant answered and filed his cross-bill on the 14th day of March, 1935. The plaintiff filed her reply to the cross-bill on the 19th day of March, 1935.
It appears that this plaintiff, then Teresa Wright, was lawfully married to one Ernest G. Hargett at Rockville, Maryland, on the 3rd day of October, 1910. They lived and cohabited together as husband and wife at Washington, D. C., New Bern, North Carolina, and Frederick, Maryland. While living at the latter place and sometime in September, 1921, the conduct of Hargett became such that the wife was compelled to leave him and come to Washington to live with her parents at 1324 South Carolina Avenue, S. E. Hargett continued to remain in Frederick, Maryland, but came to Washington, D. C., quite often, usually on weekends, and would live and cohabit with his wife on those occasions at 1324 South Carolina Avenue, S. E., as husband and wife. This continued until sometime in October, 1922, when he deserted her and went to North Carolina. Two children, a boy and girl, were born of this marriage. The boy was born in 1911 and the girl in 1919.
On March 7th, 1924, Hargett instituted proceedings for an absolute divorce against his wife in the Superior Court of Pitt County, North Carolina, and alleged that “on or about the first of October, 1918,” she abandoned him and has since lived separate and apart from him. In swearing to the complaint on March 7th, 1924, Hargett made oath that he “had been a .resident of the State for five years prior to the bringing of this action and the filing of this complaint.” An order of publication was granted, and notice of the pendency of the suit was ordered published once a week for four weeks in the Reflector, a newspaper of general circulation, published in Greenville, North Carolina, and requiring the defendant wife to appear on April 7th, 1924. The wife did not appear, and such further pro *130 ceedings were had that Hargett was granted an absolute divorce at the May Term, 1924, of such court. There was a finding by a jury that the defendant wife abandoned the plaintiff and lived separate and apart from him for five years prior to the filing of the complaint, and a further finding that the plaintiff had been a “resident of the State of North Carolina for five years just prior to the bringing of this action and the filing of the complaint.” Upon these findings an absolute divorce was granted to Hargett. Hargett subsequently married and has two children by that marriage. He lives in North Carolina, but appeared and testified here as a witness.
At the time of the filing of the complaint by Hargett for divorce in North Carolina, the Superior Court of Pitt County was by statute given jurisdiction of actions for divorce, separation and alimony. Among the grounds for absolute divorce at that time was continuous separation of the parties for five years. "When a divorce was sought on that ground, the law of North Carolina required that the plaintiff must have been a resident of the State for five years. (See Consolidated Statutes, North Carolina, 1919, as amended by Chapter 63, Laws of 1921.)
Mrs. Hargett filed her bill for an absolute divorce from Hargett in the Corporation Court of the City of Alexandria, Virginia, on the 16th day of May, 1924. An alias summons was issued returnable at rules to be held on the third Monday in July, 1924, and was personally served on the defendant Hargett in Cravere County, North Carolina, on the 5th day of July, 1924, by a deputy sheriff of that county.
In her bill of complaint, Mrs. Hargett alleged that she had been “a resident of and domiciled in the City of Alex- . andria, Virginia, for more than one year prior to the institution of this suit, and that such residence and domicile has continued uninterrupted continuously for more than one year next prior to the institution of this suit.”
*131 The bill further alleges that Mr. and Mrs. Hargett “lived together at various places until the 10th day of April, 1921, when the defendant deserted your complainant without just cause or excuse ydiile living in Frederick, Maryland, leaving your complainant and defendant in destitute circumstances with two infant children who have been supported wholly by your complainant since the aforesaid desertion.”
Hargett did not appear in the Corporation Court of Alexandria, Virginia, in response to the summons, and such further proceedings were had as that on the 27th day of August, 1924, said court entered its final decree wherein Mrs. Hargett was awarded a divorce a vinculo matrimonii and was given the custody of the two children born of said marriage.
It is that latter decree of divorce that is challenged by the cross-bill here. It is alleged that at the time of the filing of the bill for divorce in the Corporation Court of the City of Alexandria, Virginia, the plaintiff “was not and had not been an actual resident of the State of Virginia for a period of one year prior thereto, as required by law, and that she was not an actual resident of Alexandria, Virginia, at the time of so filing said bill but was in fact during said period, an actual resident and domiciled in the District of Columbia, her residence being 1324 South Carolina Avenue, Southeast, in the District of Columbia.”
The cross-bill in this connection further alleges that the plaintiff “had not resided in the State of Virginia for any period of time except a simulated and fraudulent alleged residence and that the said plaintiff obtained the purported decree of divorce hereinbefore referred to by fraud and deception practiced by her upon said court, which was without jurisdiction to render said alleged decree of divorce.” It is then alleged that at the time the cross-complainant and the plaintiff “went through a form of *132 ceremony of marriage with each other on November 12, 1927, the said plaintiff had a lawful husband then living, to wit: Ernest G. Hargett, from whom she was not legally divorced and the marriage of the plaintiff and the said Ernest G. Hargett had not been legally dissolved and that plaintiff and said Ernest G. Hargett were and are husband and wife.”
One of the prayers of the cross-bill is for an annulment of the marriage of the plaintiff and the cross-complainant. By her reply to the cross-bill the plaintiff denies the allegations quoted and avers that she was a legal resident of the State of Virginia and had been for a period of fifteen months before the filing of her bill in the Corporation Court.
Neither the cross-bill nor the reply thereto makes specific reference to the decree of divorce obtained by Hargett in North Carolina. There was objection to its reception in evidence, but the court permitted the plaintiff to introduce a certified copy of the decree.
The evidence before the court clearly establishes that the North Carolina decree of divorce is null and void because the court lacked jurisdiction to render it. Hargett, the plaintiff in that case, was not a bona fide resident of North Carolina for five years prior to the filing of the bill for divorce. As we have seen, the bill was filed on the 7th day of March, 1924. His own testimony here, and the testimony of other witnesses is to the effect that he was residing in Maryland and in the District of Columbia as late as 1920, 1921 and 1922. Furthermore, the bill charged that the wife abandoned him on or about October 1st, 1918, and since lived separate and apart from him. The fact is that the child Dorothy was born in 1919 and he and his wife were living together as husband and wife then and for several years afterward. Not having resided in North Carolina for the five-year period required by the law of that State, the Superior Court of Pitt County did not have jurisdiction *133 to award a divorce to Hargett. It is also to be noted that the last matrimonial domicile of the parties was the District of Columbia. It was here that Hargett wrongfully abandoned and deserted his wife. The decree of the North Carolina Court is not entitled to full faith and credit, and can not be considered here.
The law of Virginia in effect at the time the plaintiff instituted proceedings for divorce against Hargett is found at Section 5105 of the Code of Laws of Virginia, 1922 Supplement, and is as follows:
“The Circuit and corporation courts, on the chancery side thereof, * * shall have jurisdiction of suits for annulling or affirming marriage and for divorces. No suit for annulling a marriage or for divorce shall be maintainable, unless one of the parties is domiciled in, and is and has been an actual bona fide resident of this State for at least one year preceding the commencement of the suit; * * *. The suit, in either case, shall be brought in the county or corporation in which the parties last cohabited, or (at the option of the plaintiff) in the county or corporation in which the defendant resides, if a resident of this state, and if not a resident, in the county or corporation in which the plaintiff resides. ’ ’
The court has reluctantly come to the conclusion that the Virginia Court was without jurisdiction to render the decree of August 27th, 1924, whereby the plaintiff was awarded a divorce a vinculo matrimonii from her husband Hargett, for the reason, and the court so finds, that the plaintiff was not at any time prior to the filing of her bill a bona fide resident of the State of Virginia. Her only reason in going to Alexandria, Virginia, and renting a room was for the purpose of obtaining a divorce. She had no intention of remaining there permanently, and she came back to her home in the District of Columbia as soon as the divorce was granted. She had a domicile in the District of Columbia. It was the matrimonial domicile at the time *134 Hargett deserted and abandoned her, because they lived and cohabited together as husband and wife in the District of Columbia before he went to North Carolina.
There is no occasion to review the testimony with respect to the Virginia domicile. The plaintiff was seen frequently at her home, 1324 South Carolina Avenue, S. E., during the time she claimed to be a resident of Virginia., In making application for credit with various retail stores in "Washington, D. C., she gave that address, and in the Washington City Director for the years 1923,1924 and 1925, she is listed as residing at that place. Her own aunt saw the plaintiff at the South Carolina Avenue address during the years 1923 and 1924 whenever- she visited there and never heard of her living in Virginia. A next door neighbor saw the plaintiff coming and going as usual at that address. Her two children lived there, and her work was in Washington.
The plaintiff testifies that in going to Virginia, her purpose was to establish a home for herself and children, but no where does it appear that she made any effort to do so, and when cross-examined upon this subject, her explanations and her manner and demeanor were not at all convincing.
CONCLUSIONS
In Towson v. Towson, 126 Va. 640, 651, the Court said:
“The statute draws a clear distinction between domicile and residence and it seems clear that the object of the first provision (concerning domicile) was to prevent the opening of the Court of this Commonwealth to mere residents and to restrict them to litigants who had a more permanent identification with the State and the welfare of its citizens.”
In Downs v. Downs, 23 App. D. C. 381, the Court of Appeals says that “residence for the purpose of divorce should in all cases be in good faith” and that in divorce statutes “the term ‘residence’ is used in the sense of ‘legal residence’; that is, the place of domicile or permanent *135 abode, as distinguished from the place of temporary residence.” See, also, Rhodes v. Rhodes, 36 App. D. C. 261, 268; Corvin v. Commonwealth, 131 Va. 649, 108 S. E. 651, 653.
The law is well settled that where one spouse goes to a state other than the matrimonial domicile, and there obtains a divorce under a residence simulated for that purpose and not in good faith, the judgment is not binding upon the courts of other states.
See Benson v. Benson, 59 App. D. C. 271; Haddock v. Haddock, 201 U. S. 562; Andrews v. Andrews, 188 U. S. 14; Bell v. Bell, 181 U. S. 175; Diggs v. Diggs, 53 App. D. C. 56; Frazier v. Frazier, 61 App. D. C. 279; Friedenwald v. Friedenwald, 57 App. D. C. 13; Frey v. Frey, 61 App. D. C. 232; Simmons v. Simmons, 57 App. D. C. 216.
The Virginia Court did not have jurisdiction and, therefore, the decree of divorce of August 27th, 1924, is invalid. The finding must be in favor of the defendant, John R. Sears, on the cross-bill, and the marriage between him and the plaintiff must be annulled.
It is so ordered.
Counsel will prepare proper decree.