# Richmond

JAMES M. McFARLAND V. ALICE LENOIR McFARLAND.

March 2, 1942.

Record No. 2486.

Present, All the Justices.

The opinion states the case.

*Louis Lee Guy* and *Breeden & Hoffman*, for the appellant.

*James G. Martin & Son*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The main question for our determination is the effect in Virginia of a decree of divorce granted to a husband in a suit commenced by him by order of publication in North Carolina, when the parties never cohabited in that State, and where a court of competent jurisdiction in Virginia, the matrimonial domicile and residence of the defendant, has previously decreed that the husband was not entitled to a divorce.

James M. McFarland and Alice Lenoir McFarland were married in Norfolk, Virginia, in 1919. There were five children of their marriage. The couple lived together in Norfolk until 1935, at which time they separated and have never cohabited since.

In 1935, McFarland instituted a suit for divorce in the Circuit Court of the city of Norfolk, alleging mental cruelty. After the defendant had filed an answer, that suit was dismissed on the plaintiff's motion, at his cost, without prejudice.

The separation continued, and in November, 1937, Mc-Farland again brought suit for divorce. This suit was instituted in the Court of Law and Chancery of the city of Norfolk. The defendant answered, denying any wrong on her part and alleging that the plaintiff was guilty of desertion, adultery, and intent to marry another woman. That case was heard *ore tenus*, and decided against McFarland on the merits. By a final decree entered February 5, 1938, the defendant was awarded the custody of four of the children, and alimony and support money for herself and children in the sum of $20 per week. Mrs. McFarland did not file a cross-bill nor ask for a divorce.

On July 30, 1940, Mrs. McFarland applied to the above court for an increase in the allowances to her, and the court allowed her an increase of $5 a week. Immediately thereafter, McFarland informed counsel for the defendant that he had obtained a decree of divorce in North Carolina a few days before.

Mrs. McFarland instituted this suit against the plaintiff in the same Court of Law and Chancery on August 15, 1940. Her bill recited her marriage, the subsequent proceedings in Norfolk for a divorce, and alleged that McFarland had, without notice to her, falsely and fraudulently obtained a divorce in North Carolina. It further averred that McFarland had not been a *bona fide* resident of North Carolina for more than one year next preceding the commencement of his suit in that State; that the North Carolina court had no jurisdiction over her and no jurisdiction to grant a divorce to her husband; that McFarland falsely testified before the North Carolina court that he was the injured party when he knew the Virginia court had made an adjudication in her favor to that effect; and that he withheld that information from the North Carolina court. She prayed that she be adjudicated to be still the lawful wife of McFarland, for other general relief, and that he be required to pay a reasonable fee to her counsel for services in this suit.

McFarland answered the bill and demurred to it on the grounds that it did not state a case in equity, and that the

North Carolina divorce was entitled to full faith and credit under the Constitution of the United States, the Constitution of Virginia, and under the principles of comity between States. The action of the trial court in overruling the demurrer is assigned as error.

The evidence in the present proceeding was heard *ore tenus* on motion of both parties. On the 19th day of March, 1941, the trial court entered the decree herein complained of, holding that a decree of the Superior Court of Currituck County, North Carolina, entered at its July term, 1940, granting McFarland a divorce, was "null and void and does not divorce the parties." The costs of the proceeding were taxed against McFarland without including a fee to his wife's attorney for services in the cause. McFarland obtained this appeal from that decree. Mrs. McFarland assigns cross-error to the refusal of the trial court to allow her reasonable counsel fees.

The record shows the following pertinent facts:

McFarland, after separating from his wife in 1935, continued to live in Norfolk with his mother. His mother died in April, 1939, and shortly thereafterwards, on April 29, 1939, he moved to Moyock, North Carolina. Moyock is the first small town or hamlet about three miles beyond the State line between Virginia and North Carolina. There he roomed and boarded in the home of Mrs. Sanderlin; titled his automobile in North Carolina; and paid license, income, and property taxes in that State. There he kept his clothes, received his mail, and opened an active bank account. However, he continued his employment with the United States Government at the Naval Operating Base at Norfolk, commuting each week day by automobile to his work, a distance of about thirty-one miles, in the same manner as a number of other persons who lived at Moyock and worked in Norfolk or Portsmouth.

He testified that he considered North Carolina his home; that he had no intention of leaving there, or returning to Virginia; and that he was still living and maintaining his quarters at Moyock, where he slept every night except when his employment detained him at Norfolk. He entered actively

into the social life of Moyock, joined and attended a Sunday School there, sang in the church choir, and did other such overt acts as tended to show the establishment of his domicile in North Carolina.

Mrs. McFarland was not unaware of her husband's intention to secure a divorce because she said he told her, "He would get his divorce if he had to go to the ends of the world." She unavailingly sought to be kept advised of his action to that end. She even had detectives and her son watch his movements. They reported that McFarland often visited the apartment of a woman in Norfolk. He was seen several times in the company of this woman on the streets of that city. One of her sons testified that after December, 1939, he saw his father's car nearly every day in front of the other woman's apartment.

McFarland appears to have changed his clothes sometimes at the apartment and to have gone to the stores and restaurants in her company. His friendship for this woman and his attendance upon her is not questioned; but he denies its bearing upon the question of his domicile.

McFarland put in evidence a certified, exemplified copy of the record in the divorce suit brought by him in the Superior Court of Currituck County, North Carolina, on May 4, 1940, including his affidavit for constructive service of process showing that Mrs. McFarland was a resident of Norfolk, Virginia. The certificate showed that service was made by publication in a newspaper, published in Currituck county. His bill, duly sworn to, merely alleged that he resided in Currituck county and had been a resident of North Carolina for one year; that they were married in 1919 and lived together as man and wife until February, 1935, at which time they separated; that they had lived continuously separate and apart from that time; and prayed for a divorce *a vinculo matrimonii*.

North Carolina Code, 1939, (Michie), section 1659 (a), relating to divorce and alimony reads:

"Marriages may be dissolved and the parties thereto divorced from the bonds of matrimony on the application of either party, if and when the husband and wife have lived

separate and apart for two years, and the plaintiff in the suit for divorce has resided in the state for a period of one year. This section shall be in addition to other acts and not construed as repealing other laws on the subject of divorce."

In North Carolina service of the summons in an action for divorce may be made upon a non-resident by publication. North Carolina Code, 1939, (Michie), section 484.

The certificate further shows that the issues in the North Carolina case were submitted to a jury which found that the allegations of the bill were true and that the plaintiff was the injured party. The evidence presented before the jury to justify that finding is not before us. The Superior Court of Currituck County, at its July term, 1940, entered a decree granting McFarland an absolute divorce, dissolving the bonds of matrimony between him and Mrs. McFarland.

The bill of Mrs. McFarland in the present proceeding is a suit to affirm her status as the wife of McFarland, in view of the denial of that relation by the North Carolina decree. It is of vital importance to her to have that question judicially ascertained not only as it may affect her right to draw alimony but also her right to marry again, or dispose of her property.

By Virginia Code, 1936, section 5102, it is provided:

"When the validity of any marriage shall be denied or doubted by either of the parties, the other party may institute a suit for affirming the marriage, and upon due proof of the validity thereof, it shall be declared to be valid, and such decree shall be conclusive upon all persons concerned."

Virginia Code, 1936, section 5105*, further expressly confers upon every court of this State exercising chancery jurisdiction, jurisdiction of a suit for affirming a marriage where

---

*"JURISDICTION OF SUITS TO AFFIRM OR ANNUL MARRIAGES, OR TO OBTAIN DIVORCES; WHEN SUCH SUITS ARE MAINTAINABLE.—The circuit and corporation courts, on the chancery side thereof, and every court of this State exercising chancery jurisdiction, shall have jurisdiction of suits for annulling or affirming marriages and for divorces. * * * The suit, in either case, shall be brought in the county or corporation in which the parties last cohabited, or (at the option of the plaintiff), in the county or corporation in which the defendant resides, if a resident of this State, and if not a resident, in the county or corporation in which the plaintiff resides."

the suit is brought in the county or corporation in which the parties last cohabited, and one of the parties is, at the time of the bringing of the suit, an actual *bona fide* resident of this State.

[■] It is obvious that these statutes include suits to determine questions of doubt or denial affecting the matrimonial status as well as questions relating to the contracting rights of the parties, the form, or the solemnity of their contracts.

In *Pretlow* v. *Pretlow*, 177 Va. 524, 14 S. E. (2d) 381, we approved the following quotation from *Crouch* v. *Wartenberg*, 86 W. Va. 664, 104 S. E. 117, 11 A. L. R. 212:

" 'There is no doubt of the right and power of a court of equity, at the request of either party to the contract, to entertain a suit for the purpose of affirming or annulling a marriage supposed to be void, or as to the validity of which any doubt exists, and counsel do not question such right. *McClurg* v. *Terry*, 21 N. J. Eq. 225; *Clarke* v. *Field*, 13 Vt. 460 * * *.' "

The evidence discloses that McFarland did practically everything a man could do to make North Carolina his domicile. There was an actual change of his residence from Norfolk to North Carolina, accompanied by all the incidents of a change and the continuance of such a residence without the expectation of a further change. His physical presence in that State was coupled with his intention to remain there.

[■] If it be conceded he went there for the purpose of securing a divorce without the intention of returning to Virginia immediately after he secured it, this would not preclude him from acquiring a *bona fide* residence there. The fact of domicile and not the motive for the choice of domicile is the controlling question. *Humphreys* v. *Strong*, 139 Va. 146, 123 S. E. 554.

[■] "Whatever the motive or purpose actuating a change of domicile may be, the test to be applied in determining whether one had in fact taken place does not include them. The sole questions are: (1) An actual change of residence; and (2) the absence of an intention to remove elsewhere.

"But if the *animus* merely exists to remain there permanently, the fact that the motive of removal is to procure a

divorce is immaterial." Minor on Conflict of Laws, page 199, section 90.

When lack of jurisdiction of a foreign court, by reason of non-residence, is sought to be shown, evidence to that effect must be of the most satisfactory and convincing character, every presumption being indulged in favor of the jurisdiction found by the foreign court until the contrary is found. *Dry* v. *Rice*, 147 Va. 331, 137 S. E. 473; *McNeir* v. *McNeir*, 178 Va. 285, 16 S. E. (2d) 632.

Tested by these principles, the evidence sufficiently shows that McFarland was and had been a *bona fide* resident of North Carolina for at least one year prior to May, 1940, so that it will not be necessary to further consider the jurisdiction of the North Carolina court so far as it affects him and his rights in that State.

This case turns upon the questions, first, does the Federal Constitution and our statutes require us to give full faith and credit to the North Carolina decree, and, second, should the divorce be recognized as valid in Virginia under the principles of comity? The determination of these questions requires a careful consideration of the circumstances of the case and the law involved.

Cases involving both of these questions are legion, and the decisions are in irreconcilable conflict. Many of them will be found reviewed and analyzed in the authorities herein cited.

The several States of the United States, except as prescribed otherwise by the Federal Constitution, bear a relationship to each other of independent sovereigns, each having exclusive sovereignty and power over persons and property within its jurisdiction. Each may prescribe the form and solemnities with which contracts made by its citizens shall be executed, the rights and obligations arising therefrom, and the mode in which they shall be determined and their obligations enforced. *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565.

The control and recognition of marriage is left to each State in its sovereign capacity. One State cannot force its divorce laws upon another State, and no State is bound by comity to give effect in its courts to the divorce laws of

another State repugnant to its own laws and public policy. *Toler* v. *Oakwood Smokeless Coal Corp.*, 173 Va. 425, 4 S. E. (2d) 364, 127 A. L. R. 430.

The law of North Carolina permits a person, who has been a resident of that State for one year, to obtain a divorce if the married parties have merely lived separate and apart for two years. The cause of the separation and freedom from fault on the part of the party applying for the divorce is not necessary to be shown or proved.

In Virginia, only the party free from fault may obtain such a decree after a willful desertion by the consort for two years. Virginia Code, 1936, section 5103.

Here, the constructive service is accomplished both by publication in a newspaper and by having the clerk of court mail a copy thereof to the defendant at the last known post office address given in an affidavit filed by the plaintiff. Virginia Code, 1936, sections 6069 and 6070.

The object of the Virginia provisions is, of course, to protect the innocent party, provide the defendant with actual notice, and give him an opportunity to make his defense, if he has any.

The evidence presented before the North Carolina jury is not before us. While it was not necessary for McFarland to prove that the separation was not due to his fault, it must be assumed, without doing violence to the intelligence or probity of the jury, that he presented evidence to support their finding that he was the injured party. The finding was, nevertheless, directly contrary to the decree of the Court of Law and Chancery of the City of Norfolk of February 5, 1938, a decree from which no appeal was taken.

In Virginia, we have adhered to the doctrine of *Haddock* v. *Haddock*, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, that a refusal to recognize as valid a decree of divorce granted by the court of another State to a resident of that State against a resident of this State, upon whom no personal service or process has been made in the jurisdiction of the forum, does not offend against the full faith and credit clause of the Federal Constitution (Article 4, section 1) although it is otherwise when the suit is brought in the State

of the matrimonial domicile of the parties against the consort who has left that State and gone to another. *Howe* v. *Howe,* ante, p. 111, 1'8 S. E. (2d) 294, decided January 19, 1942; *Corvin* v. *Commonwealth,* 131 Va. 649, 108 S. E. 651, 39 A. L. R. 592; *Humphreys* v. *Strong, supra; Tyson* v. *Tyson,* 219 N. C. 617, 14 S. E. (2d) 673; 27 C. J. S., Divorce, section 333; 17 Am. Jur., Divorce and Separation, section 751.

The principles of comity do not require us to give effect to a decree falsely or fraudulently obtained or one which is contrary to the morals or public policy of this State. *Corvin* v. *Commonwealth, supra; Humphreys* v. *Strong, supra.*

"Comity has been defined as the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws; * * *." 5 R. C. L., Conflict of Laws, section 3.

Comity is not a matter of obligation. It is a matter of favor or courtesy, based on justice and good will. It is permitted "from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return." Comity is not given effect when to do so would prejudice a State's own rights or the rights of its citizens. 11 Am. Jur., Conflict of Laws, section 5.

The courts of North Carolina refuse to give effect to divorces obtained in other States upon constructive service of process either under the full faith and credit clause of the Federal Constitution or upon the ground of comity.

In the recent case of *Tyson* v. *Tyson, supra,* decided May 21, 1941, where the sole question involved was the validity in North Carolina of a divorce granted in Florida, upon service of the process by publication, it was said at 14 S. E. (2d) 675:

"Whatever the effectiveness of such a proceeding where both parties are within the jurisdiction of the forum, it has no extraterritorial effect upon a resident of another State or the matrimonial status there existing, unless the laws of the

State of such residence recognize the proceeding as valid. Here they do not. It has been the law of this State since early times that a divorce decree obtained in a foreign State against a resident of this State, where there has been no personal service within the jurisdiction of the forum, and no answer or appearance or other participation in the proceeding which might be considered its equivalent, is void here." (Cases cited.)

This holding was approved and reaffirmed in the more recent case of *State* v. *Williams* (N. C.), 17 S. E. (2d) 769, decided December 10, 1941.

The broad and general statement in the forepart of the opinion in *Humphreys* v. *Strong, supra,* with reference to the policy of this State upon the principles of comity, affords us an opportunity to again remind the profession that the statement should be considered both in relation to the facts of that particular case and in connection with the limitations contained in the latter part of the opinion.

In that case, the injured consort who obtained the decree had acquired a *bona fide* residence in Nevada, and a copy of the summons and complaint in her suit had been served on the defendant. Although the defendant kept himself informed of the progress of the suit and knew that the divorce was granted in September, 1918, he did not attack it until September, 1920. The ground upon which the divorce was secured in Nevada was upon a ground recognized in Virginia.

In *Corvin* v. *Commonwealth, supra,* recognition was refused a foreign decree based upon fraud and lack of a *bona fide* residence in the foreign State.

In *Wright* v. *Wright,* 164 Va. 245, 178 S. E. 884, relief was denied the wife against a foreign decree because of laches and also because the question involved was *res judicata* by reason of a judgment of a court of this State in which the validity of the foreign decree was an issue.

In *Dry* v. *Rice, supra,* a foreign decree was recognized on the grounds that the party attacking the decree was guilty of laches in waiting until the other party had remarried. The intervening rights of others had then accrued.

In *McNeir* v. *McNeir, supra,* we refused to allow a complainant to profit by her own wrong.

In the present case, Mrs. McFarland has done no act to estop her from questioning the validity of the foreign decree. She has taken prompt action to protect her rights, and the rights of no innocent persons have intervened.

McFarland abandoned his wife for causes which a Virginia court, with jurisdiction over both parties and the subject matter, after a full hearing on the merits, held were insufficient to justify the abandonment. That decree became *res adjudicata* upon the issues involved. Under it, Mrs. McFarland continued to have her marital and dower rights. The foreign decree, if operative here, would inflict upon her a wrong as injurious as if that decree had been fraudulently obtained.

The original separation continued without any effort on the part of McFarland for a reconciliation. The courts of Virginia were open to him; but it seems obvious why he chose North Carolina as a forum for his action. The law of that State on the subject of divorce and separation is very different from that of Virginia. It permits a person guilty of deserting his spouse to secure a divorce by persisting in his wrongful desertion for a period of two years or more. This is repugnant to the laws of Virginia and contrary to our sense of justice.

While lack of reciprocity is not generally regarded as a basis for the denial of comity, the State of North Carolina cannot properly complain of the refusal of this State to recognize a divorce granted in that State upon constructive service of process, since it does not recognize divorces similarly obtained in its sister States. A spouse guilty of the desertion and abandonment of his consort in the State of the matrimonial domicile, who takes advantage of a foreign law contrary to the law of this State, has no just call upon this State for the exercise of comity. The employment of comity was never intended to have the effect of making a farce of our laws, our institutions, and the judgments of our courts.

All of the circumstances and the weight of reason

and authority, we think, support our conclusion that the decree of the Superior Court of Currituck County, North Carolina, entered at its July term, 1940, so far as it attempts to substitute the law of North Carolina for that of Virginia, is inoperative and invalid in this State. In Virginia, Mrs. McFarland remains the lawful, wedded wife of James M. McFarland.

The decree of the trial court was technically erroneous in declaring the foreign divorce "null and void," inasmuch as the courts of this State have no jurisdiction over the judicial proceedings of another State and cannot alter, amend, or repeal the judgments and decrees of such State. *Dry* v. *Rice, supra.* Its decree should, therefore, be modified to read as declaring the foreign divorce to be inoperative and invalid in the State of Virginia.

Within the sound discretion of the court, allowances for expenses of a wife, including reasonable counsel fees, are proper when such allowances are necessary in connection with the prosecution of her suit to affirm her marital status. Virginia Code, 1936, section 5107. Such an allowance was granted in *Pretlow* v. *Pretlow, supra,* a suit for the annullment of a marriage. It fully appears to be necessary and proper in the present case. The decree appealed from will be further modified by allowing counsel for the appellee the sum of $200 for his services in the trial court, the preparation of the brief, and argument in this court.

Subject to these modifications, the decree appealed from is affirmed with costs.

*Modified and affirmed.*