## CIRCUIT COURT OF FAIRFAX COUNTY

Mark Barbero

v.

Belinda Kay Barbero

March 21, 1991

Case No. (Chancery) 117407

By JUDGE ROSEMARIE ANNUNZIATA

The matter before me implicates the jurisdiction of this Court to hear and adjudicate the divorce case filed herein by the complainant, Mark Barbero, on August 8, 1990. The defendant, Belinda Kay Barbero, contends that prior to the filing of the suit, Mr. Barbero was not an actual bona fide resident and domiciliary of this state for the requisite period.

The parties were married in 1981 and until 1990 lived in Virginia, predominately in Virginia Beach, with their daughter, Megan, while Mr. Barbero was in the Navy. He retired from the service at the end of January, 1990.

Throughout the period he was in the Navy, Mr. Barbero designated Florida as his domicile, although he was not living there and he and Mrs. Barbero never lived in Florida during the marriage. He paid neither personal property nor income taxes to the state of Florida, or to Virginia. Mrs. Barbero, however, paid both income and personal property taxes to Virginia, and she was registered to vote in Virginia. Mr. Barbero was registered to vote in Florida. The Barberos also owned real property in Virginia Beach and paid real property taxes on it. Upon his release from active duty with the Navy, Mr. Barbero executed a DD214 form making his income taxable in Virginia. However,

to date, no state taxes have been withheld from his retirement income.

When Mr. Barbero retired from the Navy, he planned to start a second career. In their discussion of options. Mrs. Barbero expressed her desire to move somewhere in the southeast, and, in particular, to a locality between Alabama and North Carolina so that she could be geographically closer to her family. Mr. Barbero wanted to move to the place offering the best career opportunity.

Mr. Barbero's job search was earnestly pursued. He interviewed for positions in Virginia Beach, California, and North Carolina. Mrs. Barbero accompanied him to the interviews out of state to view the area and gather information about residential properties which the couple could purchase in the event a job offer acceptable to Mr. Barbero was made. The trips were, at most, of a few days' duration.

In March of 1990, Mr. Barbero went to the Fishkill/Newburgh, New York, area with the hope of beginning a job with Danbury Printing Company in Danbury, Connecticut. While waiting for the printing job offer to become final, Mr. Barbero agreed to act as a consultant to Donald Boehm, a long-time friend of Mrs. Barbero and her family. According to Mr. Barbero, he was paid $1,500.00 weekly for these services. He also started a construction/property restoration business with a friend of Boehm's, incorporating under the name of Moe-Bar & Associates, Inc.

Mrs. Barbero and the parties' minor child joined Mr. Barbero in April, after quitting the job she had in Virginia Beach during the four prior years and from which she derived an annual income of some $25,000.00. The parties leased a condominium in Fishkill, New York, which contained a "kick-out" clause permitting the Barberos to terminate the lease upon sixty days' notice. They opened a joint checking account in April of 1990 and began receiving mail at the New York address.

When the parties left Virginia Beach, they put the marital residence on the market and sought the assistance of a neighbor in an effort to sell the property without the services of a real estate company. Newspaper ads were run in conjunction with the Barberos' effort to sell the house. The furnishings were left in the house, except for the couple's king-size bed, the child's bedroom furniture, certain kitchen items, and some of their child's

toys which Mrs. Barbero picked up while returning from a visit from North Carolina in May and brought to New York. All the parties' clothing and personal items were taken to New York.

The marital home remained on the market the entire time the Barberos were in New York until it was sold in the summer of 1990 after the parties separated. It was not listed with a real estate agent until after the separation. Mr. Barbero remained in New York until July 20, 1990, when he returned to Virginia to complete the sale of the marital home after the parties decided to divorce. He remained in Virginia thereafter, although he gave no indication to Mrs. Barbero that he would not be returning to New York after this trip to Virginia. Mrs. Barbero continues to reside in New York.

Mr. Barbero testified that the parties intended to stay in New York if his job situation worked out. If it did not, he stated that the parties intended to return to Virginia Beach. Barbara McDonald, the godmother of the Barberos' daughter, testified she was unaware the parties had left Virginia Beach and were living in New York until Mrs. Barbero telephone her from New York. She expressed surprise about the move and also testified that she was told by Mrs. Barbero that the parties would remain in New York if the job situation worked out. Mrs. Barbero testified the parties' intent was to reside in New York and not to return to Virginia.

It is well-established that domicile is presumed to continue until a new one is obtained, *Dotson v. Commonwealth*, 192 Va. 565, 572 (1951), and to constitute a new domicile two things must concur: first, a residence in the new locality; second, the intention to remain there. *Guilford v. Hayes*, 169 Va. 548 (1938). The burden of proof of change of domicile is on the person alleging it, in this case Mrs. Barbero. *Lindsay v. Murphy*, 76 Va. 428 (1881). In the event of a change of domicile, the intention must be supported by acts which are consistent with the change and not contradictory to it. *See, Fox v. Commonwealth*, 207 Va. 701 (1967), *Davis v. Dixon*, 184 F. 509 (S.D. W. Va. 1910). A change in residence for the purpose of seeking employment, without more, does not indicate a change in domicile. *Talley v. Commonwealth*, 127 Va. 516 (1920); *White v. Manchin*, 318 S.E.2d 470 (W. Va. 1984).

However, where the change is accompanied by an actual change in residence and the absence of intention to move elsewhere, domicile is established. *McFarland v. McFarland*, 179 Va. 418 (1944).

I find the evidence in his case establishes, first, the fact that the parties established a residence in New York. Prior to their move to New York, the parties made several trips outside the state of Virginia in search of new employment for Mr. Barbero. In each of those instances, the parties remained for a few days in the locality and lived in motel or hotel quarters. Mrs. Barbero retained her job in Virginia Beach, and the parties made no attempt to sell their home in Virginia Beach in conjunction with these trips to find employment.

In New York, in contradistinction to the above, the parties moved into and rented a townhouse condominium and put their Virginia Beach residence on the market for sale. Mrs. Barbero quit her job, giving two weeks' notice, and moved immediately to New York with the parties' child. Although Mr. Barbero testified she quit her job for medical reasons and not at his behest, it is noteworthy that she did not remain in Virginia Beach as might be expected if Mr. Barbero's plans for employment in Danbury were provisional. They gave the New York address as their new mailing address, and they identified the New York home as their residence in the property settlement agreement executed in New York on June 18, 1990. In a video at Easter, Mrs. Barbero referred to the condo as "their new home."

The parties' conduct in New York evidences the establishment of a residence in New York. *See Hiles v. Hiles*, 164 Va. 131, 138 (1935).

While one may be a resident of a particular locality without being domiciled there, *Talley v. Commonwealth*, 127 Va. 516 (1920), I also find that the parties in this case changed their domicile from Virginia to New York. The facts enunciated earlier serve as predicates for the resolution of this issue, together with the following.

Mr. Barbero testified that he intended to remain in New York provided his employment status was settled. In my opinion, the potential or actual failure of his employment goals is not, in itself, sufficient to establish the absence of intent. While Mr. Barbero contends that his intent to remain in New York was provisional and that

his stay was temporary and contingent on his being offered a position with the Danbury Printing Company, the evidence establishes that his stay in New York was not governed by the Danbury job. He testified he went to New York with the expectation that the position would be offered in two to four weeks. Notwithstanding the prolongation of this waiting period and notwithstanding the absence of a job with Danbury Printing Company, Mr. Barbero made no attempt to return to Virginia until July, 1990. Significantly, Mr. Barbero embarked on other employment projects upon his arrival in New York, including the formation of a construction company. Mr. Barbero urges the court to discount this fact because the company was minimally functional. However, the failure of the enterprise, accepting *arguendo* this fact, is not as significant or probative on the issue of intent as the establishment of the company itself, an act inconsistent with his claimed intent that his stay in New York was contingent. It is also noteworthy that the condo leased by Mrs. Barbero in March was large enough to house the family, a fact inconsistent with Mr. Barbero's testimony that they went to New York, expecting a temporary stay of two to four weeks, awaiting resolution of the Danbury job situation.

The parties' intent regarding domicile is also evidenced in the property settlement agreement they reached in New York; it makes no reference to Mr. Barbero having a Virginia residence; indeed his residence is identified by an address in New York. Even more significantly, it includes provisions for visitation that fail to expressly mention Mr. Barbero's intent to return to Virginia, a reference which surely would have been present if he, the noncustodial parent per the agreement, intended to return permanently to this state. Finally, paragraph (k), Article VIII, imposes limitations on Mrs. Barbero's freedom to move with the child from her present residence in New York, provided Mr. Barbero remains within a fifty-mile radius of her present address. The inclusion of such a provision cannot be reconciled with Mr. Barbero's testimony that he intended to return to Virginia; in light of that intent, it would be wholly ineffective, almost upon execution.

In summary, the evidence supports a finding that from the end of March until July 2, 1990, Mr. Barbero

resided in New York with "the absence of an intention to remove elsewhere." *McFarland v. McFarland*, 179 Va. 418 (1942). *See also Guilford v. Hayes*, 169 Va. at 555. "Intent is to be inferred from declarations and from conduct, and it is a well-settled rule that the evidence of expressed intent has no controlling weight if such an intent is inconsistent with the acts and general conduct of the person. In such a case, acts and conduct showing intent outweigh his declaration or expressions of intent." *Bowen v. Commonwealth*, 126 Va. 182 (1919).