## Richmond

RAYMOND SMITH, ET AL., ETC.

V.

ROBELL GIVENS, AN INFANT

April 30, 1982.

Record No. 791822.

Present: All the Justices.

*J. Thomas Province* for appellants.
*Caroline Watts (Watts & Watts,* on brief), for appellee.

POFF., J., delivered the opinion of the Court.

This is an appeal from a judgment approving a settlement in a wrongful death action and holding, *inter alia,* that the decedent was the father of an illegitimate son, the sole member of the first class of beneficiaries defined in Code § 8.01-53.

Gene William Smith died of injuries sustained in a collision between two automobiles operated by Wilburn Lynn Welch and Wade Cleveland Welch. The decedent, 24 years of age and unmarried, was survived by his parents and several brothers and sisters, four of whom, *viz.,* Raymond Smith, James Larry Smith, Sherri Lynn Smith, and Sharon Denise Smith, were infants. Evelyn Lorraine Smith, the decedent's mother, qualified as administratrix of the estate and brought a wrongful death action against the two drivers. The litigants negotiated a compromise settlement, and the trial court convened the parties pursuant to Code § 8.01-55 to consider the terms of the settlement and determine distribution of the proceeds.

During the taking of discovery depositions, it had been suggested that the decedent may have been the father of Robell Gemeko Givens, an illegitimate infant born in Indiana. The trial court appointed guardians ad litem for Robell and for the decedent's infant siblings and conducted a hearing on the paternity question. The record contains no transcript of that hearing, and we review the evidence summarized in a statement of facts approved by the trial court.

The infant Robell, present in person and by guardian ad litem, called three witnesses. The decedent's mother, with whom Robell was spending the summer, testified that the decedent had informed her that "he had a son living in Indiana", that "his child's name was Robell Givens", that the child's mother was "Bonita Givens Jones of Evansville, Indiana", and that "he would like to go to Indiana to see him." The witness further said that "decedent was living in Indiana . . . [at] the approximate time the infant would have been conceived."

Charles Edward Smith, one of the decedent's adult brothers, testified that he first heard about Robell when he learned that he was coming to Virginia for a summer visit but that the decedent "had once told him that the decedent would like to go back to Indiana for a visit."

Robert Smith, another adult brother, testified that the decedent "had mentioned to him that he had a son named Robell and that he wanted to go see him." Robert also testified that "the decedent had said, 'I guess he's my son' ".

Robell's guardian ad litem then introduced an envelope addressed to "Mr. Robell Givens, 785 Judson Street, Evansville, Indiana; the envelope was typed, had the decedent's home address as

the return address, and was postmarked Orange, Virginia, on February 16, 1977."

The decedent's infant brothers and sisters objected to the testimony and the envelope as hearsay and moved to strike Robell's evidence as insufficient to prove paternity. The trial court overruled the objection and the motion, and the hearing resumed. The decedent's mother and his brother Robert testified that the decedent based his belief that he was Robell's father upon a letter he had received from Robell's mother in which she told him that she had given birth to his son after he had moved back to Virginia. Robert also stated that the decedent and Robell's mother "went together during the time he was in [Indiana]" and that the decedent "referred to Robell Givens as 'my little boy' ".

At the conclusion of the hearing, the trial court made an oral ruling that "the declarations of the decedent constituted an acknowledgment that the infant was his child, such acknowledgment being sufficient proof of paternity in a wrongful death case, and that the standard of proof to determine paternity in a wrongful death case was different than the standard of proof to determine paternity in a support case, or in a case involving descent and distribution."

The trial court applied this ruling and entered final judgment approving the terms of the settlement and awarding the net proceeds to Robell. Naming Robell as appellee, the decedent's infant siblings appeal from the judgment.

Appellants first contend that the trial court applied the wrong standard of proof of paternity. They ask us to hold that the proper standard is that applied in cases of descent and distribution, *i.e.,* proof by clear and convincing evidence. Code §§ 64.1-5.1(2)(b), -5.2.

In *Allstate Messenger Serv. v. James,* 220 Va. 910, 266 S.E.2d 86 (1980), an employer contesting the Industrial Commission's award of death benefits to an illegitimate infant urged us to extend the evidentiary standards of proof of paternity defined in the child support statute, Code § 20-61.1, to a workmen's compensation claim. Declining to do so, we said

When, as a public policy determination, the General Assembly decides to prescribe special evidentiary standards for proof of paternity, it knows how to do so. It did so when it enacted Code § 20-61.1. It did so again when it transported

the provisions of that section into Code § 64.1-5.2 governing descent and distribution. Acts 1978, c. 647. It could have done the same for purposes of the Workmen's Compensation Act. It did not. For us to do so would be to rewrite Code § 65.1-66. Declining the invitation to invade the legislative domain, we hold that the evidentiary requirements of Code § 20-61.1 do not apply to the Workmen's Compensation Act. [footnote omitted.]

*Id.* at 912, 266 S.E.2d at 87.

Applying the same rationale, we hold that, absent the presumption of legitimacy which attaches to a child born in wedlock, *see Scott And Als* v. *Hillenberg And Als,* 85 Va. 245, 7 S.E. 377 (1888), the standard of proof of paternity in a wrongful death case is proof by a preponderance of the evidence.

Even so, appellants argue that the appellee introduced no evidence of paternity except the envelope and the testimony concerning the decedent's oral declarations; that such evidence should have been excluded as hearsay; and hence, that the appellee's evidence was insufficient under any standard of proof.[1]

We agree that testimony concerning extra-judicial declarations of paternity made, orally or in writing, by a putative father is hearsay when offered as proof of the truth of the fact declared. *See generally,* 5 Wigmore, Evidence § 1361 (Chadbourn rev. 1974); McCormick, Evidence § 246 (2d ed. 1972). Assuming such, the appellee says that the envelope and the testimony concerning the decedent's oral declarations were properly admitted in evidence under the pedigree exception to the hearsay evidence rule.

An exception to the hearsay rule allows the factfinder to consider an out-of-court statement as proof of the fact asserted. The pedigree exception allows consideration of hearsay evidence regarding a person's family relationship as proof of the existence of the relationship. Here, the court used decedent's declarations that Robell was his son to infer the paternal relationship. We believe the pedigree exception is inapplicable here.

Testimony concerning pedigree is well recognized as an exception to the hearsay rule, provided that no other better evi-

---

[1] We find no merit in the appellee's suggestion that the sufficiency question was not properly preserved for purposes of appeal.

dence can be obtained, and that the declarant or source of the witness' information was a member of the family or related to the family, whose history the fact concerns, and was deceased or out of the State.

*Rawles* v. *Bazel,* 141 Va. 734, 755, 126 S.E. 690, 696 (1925).

We are of opinion that, for purposes of the pedigree exception, the decedent in a wrongful death action is "a member of the family or related to the family, whose history the [decedent's declaration of paternity] concerns", *viz.,* the family composed of those named as beneficiaries in Code § 8.01-53. Thus, hearsay evidence of the decedent's declarations is admissible in such a case,[2] provided "no other better evidence can be obtained".

■ The proviso is an essential element of the definition of the pedigree exception. We have recently held that the exception did not apply where the mother of a child alleged to be the illegitimate son of a decedent in a wrongful death case "was a live witness, under oath, and subject to cross-examination." *Cassady* v. *Martin,* 220 Va. 1093, 1099, 266 S.E.2d 104, 107 (1980). So far as the record here reveals, the appellee's mother was living in Indiana when the hearing was held below. Under the provisions of Code § 8.01-411, *et seq.,* and Indiana Tr. Proc. R. 28(E), the appellee could have taken his mother's deposition in Indiana and, in compliance with our Rule 4:7(4), introduced her testimony as direct evidence in support of his claim. Reaffirming our decision in *Cassady,* we hold that the pedigree exception did not apply here and that the trial court erred in admitting the hearsay evidence.

Absent this evidence, there is nothing of record to support the trial court's ruling that the decedent was the father of the appellee. We will reverse the judgment as to that ruling and remand the case for the entry of a new order approving the terms of the settlement and distributing the net proceeds in accordance with

---

[2] Hearsay declarations of paternity made by a decedent in a workmen's compensation case have been held admissible under the pedigree exception. *Morgan* v. *Susino Const. Co.,* 130 N.J.L. 418, 33 A.2d 607 (1943), *aff'd.,* 131 N.J.L. 329, 36 A.2d 604 (1944). *See also,* 5 Wigmore, Evidence § 1492 (Chadbourn rev. 1974). *Caveat,* some hearsay declarations of paternity are excluded by statutory limitation in certain cases. *E.g.,* Code §§ 20-61.1 and 64.1-5.1, -5.2.

the views expressed in this opinion and the provisions of Code §§ 8.01-53, -54.

*Reversed and remanded.*