Present:  Carrico, C.J., Lacy, Koontz, Kinser, and Lemons, JJ. and Stephenson, S.J.

AMERICA ONLINE, INC.

v.  Record No. 000974        OPINION BY JUSTICE DONALD W. LEMONS
                                             March 2, 2001
ANONYMOUS PUBLICLY TRADED COMPANY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stanley P. Klein, Judge

In this appeal, we consider whether an anonymous litigant may utilize the coercive powers of Virginia courts under the Virginia Uniform Foreign Depositions Act, Code § 8.01-411 et seq. ("UFDA").  Pursuant to Rules 4:1(c) and 4:9(c), America Online, Inc. ("AOL") sought to quash a subpoena duces tecum issued to it by the Clerk of the Circuit Court of Fairfax County and sought a protective order barring the discovery sought by an anonymous litigant proceeding as "Anonymous Publicly Traded Company" ("APTC").  The trial court[1] refused to quash the subpoena duces tecum or issue a protective order. Because the trial court abused its discretion in permitting APTC to proceed anonymously under the UFDA, we reverse the judgment of the trial court and remand for further proceedings.

I. Facts and Proceedings Below

---

[1]  We will refer to the Fairfax County Circuit Court as the "trial court" and the Marion Superior Court in Indiana as the "Indiana court."

APTC is a publicly traded Delaware corporation with its principal place of business in Indianapolis, Indiana. On February 9, 1999, APTC filed a complaint, captioned "Anonymous Publicly Traded Company v. John Does 1 through 5," in the Indiana court. In its complaint, APTC asserted that the John Doe defendants, whose identities and residences were unknown,[2] "made defamatory and disparaging material misrepresentations" about APTC in internet chat rooms.[3] Additionally, APTC asserted its belief that the defendants were current and/or former employees who breached their fiduciary duties and contractual obligations by publishing "confidential material insider information" about APTC on the internet. Although it did not specify what harm would be incurred by identifying itself in the Indiana court, APTC contended that it had to proceed anonymously "because disclosure of its true company name will cause it irreparable harm."

On August 11, 1999, in response to APTC's application for assistance in discovery and for an order authorizing discovery in Virginia, the Indiana court issued an order permitting APTC to "proceed with a non-party production request to America

---

[2]  APTC claimed that the John Does used pseudonyms to protect their real names.

[3]  APTC defined an internet chat room as "a virtual room on the Internet where a conversation session takes place between individuals who often use pseudonyms to maintain anonymity."

Online, Inc. by obtaining a Subpoena Duces Tecum from the Virginia trial courts having jurisdiction over America Online, Inc." The order authorized APTC to request assistance from Virginia courts in obtaining from AOL, the names, addresses, telephone numbers, and any other identifying information pertaining to four AOL subscribers. In granting the request, the Indiana court noted:

> [APTC] is directed and authorized to seek assistance of the Virginia state trial courts for the reason that under principles of comity and reciprocity, under Indiana Trial Rule 28, Indiana would, in the reverse situation, assist Virginia residents in the discovery of information from persons or entities domiciled or residing in Indiana through the assistance of subpoenas or other matters in support of discovery procedures and practices in the State of Virginia.

On September 3, 1999, the Clerk of the Circuit Court of Fairfax County issued a subpoena duces tecum to AOL requesting the names, addresses, telephone numbers, and all other identifying information regarding the four AOL subscribers. AOL indicated to APTC its intention to contest the issuance of the subpoena duces tecum in part because of the anonymity of APTC. Thereafter, APTC filed a motion in the Indiana court on October 14, 1999, for permission to proceed anonymously until it could amend its complaint to specifically name the John Doe defendants.

AOL filed its motion to quash in the trial court on October 15, 1999, arguing that APTC should not be permitted to proceed until it revealed its identity. On October 19, 1999, the Indiana court issued an order granting APTC's motion to proceed anonymously. The Indiana court stated that APTC:

> [S]hall be allowed to proceed as anonymous in this action up and until it determines the identity of the Defendants and further determines whether to proceed with this action against the named Defendants at which time should it determine to proceed and file an amended complaint, in the amended complaint [APTC] shall list itself by its proper legal name and list those Defendants against whom it is proceeding by proper legal name.

The Indiana court did not conduct an evidentiary hearing and no reasons were given for its decision, which was rendered ex parte.

After an in camera examination of copies of the internet postings that were the subject of the underlying litigation in Indiana, the trial court issued an opinion and order denying AOL's motion to quash and request for a protective order. Although the trial court conceded that there is a First Amendment interest in ensuring that courts remain open to the public, it nevertheless ruled that APTC should be permitted to proceed anonymously.[4] Specifically, the court stated:

---

[4] The trial court also determined that AOL had standing to raise this issue and that APTC was required to satisfy a

4

As any First Amendment right of the public to know the identity of the plaintiff in the Indiana proceedings will only be marginally affected at these preliminary stages of those proceedings, this Court believes that comity should be accorded to the Indiana court's decision, under its Trial Rules, to allow APTC to proceed anonymously for a limited period of time. Although the Indiana court did not have the benefit of a brief from AOL when it authorized APTC to maintain its anonymity after AOL filed the instant motion, counsel herein agree that the Indiana court was then aware of AOL's objection. In addition, at least part of the salutary prophylactic effect of requiring openness in judicial proceedings has been assured by the Court's requirement that APTC supply copies of the relevant Internet postings to opposing counsel and to the Court. Both this Court and the John Does now either know or can readily ascertain the true identity of APTC. Consequently, any possible abuses of the judicial system by APTC in initiating either the proceeding in the Indiana court or in this Court can be addressed by the respective courts under applicable statutes authorizing sanctions. Hence, this Court defers, in its analysis of the issues before this Court, to the Indiana court's determination to allow APTC to maintain its anonymity for a limited period of time.

AOL appeals the adverse ruling of the trial court.

---

three-pronged test to determine whether issuance of the subpoena would unreasonably burden the First Amendment rights of the John Doe defendants. The trial court further determined that APTC satisfied this test. Although AOL does not concede that the three-pronged test sufficiently protects free speech and privacy interests or that APTC satisfied the requirements of the test as laid out by the trial court, it acknowledges that these issues are not before us on appeal.

On appeal, AOL contends that the trial court erred in permitting its subpoena power to be invoked by APTC without requiring APTC to make a showing of any legitimate and compelling need to proceed anonymously and that the trial court should not have deferred on grounds of comity to the Indiana court's decision to allow APTC to proceed anonymously. Specifically, AOL argues that the Indiana court's ruling arose out of a non-adversarial, ex parte proceeding in which either no legal principles or legal principles that differ from Virginia law and public policy were applied.

APTC contends that the trial court exercised sound discretion in granting comity to the order of the Indiana court. Furthermore, APTC contends that, even if comity were not afforded the Indiana court's order, it has a valid privacy interest that is advanced by permitting it to anonymously utilize the Virginia courts for discovery purposes in aid of the Indiana litigation.

## II. Standard of Review

Ordinarily, a trial court's discovery orders are not subject to review on direct appeal because they are not final within the contemplation of Code § 8.01-670. However, an order granting or refusing a motion to quash or issue a protective order, in a proceeding brought in a court of this

6

Commonwealth pursuant to the UFDA, is a final order subject to appellate review.

The original and appellate jurisdiction of the Supreme Court of Virginia is conferred by Article VI, § 1 of the Constitution of Virginia which provides in part that, subject to constitutional limitations, "the General Assembly shall have the power to determine the original and appellate jurisdiction of the courts of the Commonwealth."  The UFDA does not provide for appeal of orders pursuant to its provisions; consequently, we must look to Code § 8.01-670 for the source of the Court's appellate jurisdiction in this matter.  Because this matter arises on the law side rather than the chancery side of the Circuit Court, the Court's authority to review the order of the trial court is found in Code § 8.01-670(A) which enumerates particular matters which may be the subject of appeal and concludes with subsection (3) which provides appellate jurisdiction over any matter where a "person" is  "aggrieved . . . [b]y a final judgment in any other civil case."

An action under the UFDA is a separate action, distinct from, although ancillary to, the underlying cause of action in the foreign jurisdiction.  In the case before us, when the trial court rendered its order, it disposed of every aspect of the case before it and settled all issues raised by the

7

parties.  In Warford v. Childers, 642 S.W.2d 63 (Tex. Ct. App.

1982), the Texas Court of Appeals, applying statutory language

identical to that adopted in the Virginia UFDA statute,[5] held

that the resolution of the discovery dispute was a final,

appealable judgment.

> To hold that such an order is
> interlocutory and non-appealable would
> forever foreclose review by the orderly
> process of appeal and would relegate the
> parties to an extraordinary proceeding.
> Obviously, the order cannot be reviewed by
> this court as part of an appeal from a
> final judgment of the [foreign] court and
> cannot be reviewed by the [foreign]
> appellate court under any circumstances.
> Thus, although the order may have an
> interlocutory relationship with the
> [foreign] suit, we conclude that it is a
> final judgment on all issues in
> controversy in Texas and that we have
> jurisdiction to review it by appeal.

Id. at 66.  See also, Lougee v. Grinnell, 582 A.2d 456 (Conn.

1990), overruled on other grounds by State v. Salmon, 735 A.2d

333 (Conn. 1999).

   We agree with the reasoning of our sister states, Texas

and Connecticut, and conclude that under the UFDA, an order of

the trial court disposing of all issues before it and

concluding the entirety of the proceedings in a Virginia

court, is a final order subject to appeal under Code § 8.01-

670.  Discovery orders in suits brought in Virginia are

---

[5] Tex. Rev. Civ. Stat. Ann. art. 3769a (Vernon Supp.

8

interlocutory and not subject to immediate appeal.  Such

orders are subject to appellate review at the conclusion of

the underlying suit.[6]

We review the trial court's refusal to quash the issuance

of a subpoena duces tecum or issue a protective order under an

abuse of discretion standard.  O'Brian v. Langley Sch., 256

Va. 547, 552, 507 S.E.2d 363, 366 (1998) (noting that,

"[g]enerally, the granting or denying of discovery is a matter

within the discretion of the trial court").

### III.  Analysis

Virginia has adopted the UFDA, which provides in part:

> Whenever any mandate, writ or commission
> is issued out of any court of record in
> any other state, territory, district or
> foreign jurisdiction, or whenever upon
> notice or agreement it is required to take
> the testimony of a witness or witnesses or
> produce or inspect designated documents in
> this Commonwealth, witnesses may be
> compelled to appear and testify and to
> produce and permit inspection or copying
> of documents in the same manner and by the
> same process and proceeding as may be
> employed for the purpose of taking
> testimony or producing documents in
> proceedings pending in this Commonwealth.

Code § 8.01-411.  This legislative provision is rooted in

principles of comity and provides a mechanism for discovery of

---

1981).

[6] Of course, we have previously recognized that an order
of contempt for disobedience of a discovery order may be

evidence in aid of actions pending in foreign jurisdictions. Some states have adopted the UFDA while others have adopted the Uniform Interstate and International Procedure Act. Additionally, some states have modeled their rules of civil procedure after the Federal Rules and still others have crafted their own unique rules concerning discovery proceedings in aid of foreign litigation.[7]

Under the UFDA, reciprocity is required, and the "privilege extended to persons in other states by § 8.01-411 shall only apply to those states which extended the same privilege to persons in this Commonwealth." Code § 8.01-412. We have previously recognized reciprocity with the state of Indiana based upon the UFDA. See Smith v. Givens, 223 Va. 455, 460, 290 S.E.2d 844, 847 (1982).

The initial question for decision in this case is whether the trial court erred in finding that the UFDA and principles of comity permit APTC to utilize the coercive power of Virginia courts while remaining anonymous. We have no reluctance to show due deference to the orders of the Indiana courts on any occasion when the circumstances are proper for

---

appealed pursuant to Code § 19.2-318. See HCA Health Services of Virginia v. Levin, 260 Va. 215, 530 S.E.2d 417 (2000).

[7] For a survey of the laws concerning foreign depositions in the 50 states and the District of Columbia, see The Virginia Law Foundation, Civil Discovery in Virginia, Chapter 7 (1999).

the application of the principles of comity.  We do not think this is one of those occasions.

In the case before us, the trial judge carefully reviewed the record and required an in camera review of the allegedly tortious internet chat room postings presumably to verify the bona fides of the underlying action in the Indiana court.  The legitimacy of the underlying claim is an issue separate and distinct from permitting a plaintiff to proceed anonymously.  In the ultimate analysis, on the basis of comity, the trial court deferred to the Indiana court's determination to permit APTC to proceed anonymously for a "limited period of time" and denied AOL's motion to quash and for a protective order.

As we have previously noted:

> Virginia courts should grant comity to any order of a foreign court of competent jurisdiction, entered in accordance with the procedural and substantive law prevailing in its judicatory domain, when that law, in terms of moral standards, societal values, personal rights, and public policy, is reasonably comparable to that of Virginia.

Oehl v. Oehl, 221 Va. 618, 623, 272 S.E.2d 441, 444 (1980).

We have also stated:

> Comity is not a matter of obligation. It is a matter of favor or courtesy, based on justice and good will.  It is permitted from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be

11

> done in return. Comity is not given effect
> when to do so would prejudice a State's
> own rights or the rights of its citizens.

McFarland v. McFarland, 179 Va. 418, 430, 19 S.E.2d 77, 83 (1942) (internal quotation marks omitted).

While fully appreciating the importance of comity as a guiding principle in the relationship between sovereigns and as a tool of judicial economy, we have recognized limitations upon its application.  Before according the privilege of comity, we have required a showing of personal and subject matter jurisdiction, Oehl, 221 Va. at 623, 272 S.E.2d at 444, that "the procedural and substantive law applied by the foreign court [was] reasonably comparable to that of Virginia," id., that the decree was not "falsely or fraudulently obtained,"  McFarland, 179 Va. at 430, 19 S.E.2d at 83, that the order sought to be enforced was not "contrary to the morals or public policy of this State," id., and that the enforcement of the order would not "prejudice [Virginia's] own rights or the rights of its citizens,"  Eastern Indem. Co. v. Hirschler, Fleischer, Weinberg, Cox & Allen, 235 Va. 9, 15, 366 S.E.2d 53, 56 (1988) (citations omitted).

The action filed in Indiana is unique.  The plaintiff is anonymous, as are all five John Doe defendants.[8]  Although the

_____

[8] APTC seeks discovery of the identity of only four of the John Doe defendants in the Virginia proceeding.

pleading certainly invokes the subject matter jurisdiction of the Indiana court, it is uncertain whether personal jurisdiction may be obtained over any of the anonymous defendants. Further, while the Indiana court permitted APTC to proceed anonymously, it is clear that no hearing was held concerning the question, no evidence was received by the court,[9] no reasons for the decision were given, and the order permitting anonymous maintenance of the action was granted in a non-adversarial, ex parte proceeding. Significantly, because no evidence was received and no reasons for the decision were given by the Indiana court, we cannot determine whether the procedural and substantive law applied by the Indiana court was "reasonably comparable to that of Virginia." See Oehl, 221 Va. at 623, 272 S.E.2d at 444. Accordingly, we find that these circumstances do not present a situation where comity should be granted to the Indiana court's order permitting APTC to proceed anonymously.

Irrespective of the question of comity, a Virginia trial court may conduct an independent inquiry concerning anonymous maintenance of an action. Although there are several reported cases in Virginia wherein a plaintiff proceeded anonymously,

---

[9] An affidavit of counsel to APTC was filed in support of the motion to proceed anonymously. The affidavit recites what the unnamed client believes and offers counsel's gratuitous conclusion that his client's beliefs are reasonable.

the issue of anonymity was resolved by consent and never presented to this Court.[10]  Accordingly, we must decide, for the first time, the circumstances under which a plaintiff may proceed anonymously in Virginia courts.

Over half a century has passed since the United States Supreme Court noted, "[a] trial is a public event. . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."  Craig v. Harney, 331 U.S. 367, 374 (1947).  However, "[t]he equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical."  Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. 1981).  Accordingly, there is no absolute bar to a plaintiff proceeding anonymously.  In exceptional cases, "the need for party anonymity overwhelms the presumption of disclosure mandated by procedural custom."  Id.  Upon proper circumstances, courts must balance the need for anonymity

---

[10] We noted in A.H. v. Rockingham Publ'g Co., 255 Va. 216, 219 n.2, 495 S.E.2d 482, 484 n.2 (1998), that "[b]ecause this claim arises out of a sexual assault on a minor, the plaintiff used a pseudonym to protect his identity."  See also Doe v. Doe, 222 Va. 736, 284 S.E.2d 799 (1981); Baby Doe v. John and Mary Doe, 15 Va. App. 242, 421 S.E.2d 913 (1992); C.P. v. Rockingham Publ'g Co., 34 Va. Cir. 79 (1994); Jane and John

14

against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party.  See Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068 (9th Cir. 2000).  As the Eleventh Circuit has stated, "[t]he ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.  It is the exceptional case in which a plaintiff may proceed under a fictitious name."  Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992) (citation and internal quotation marks omitted).

In a review of decisions from throughout the country, the Fourth Circuit compiled a list of "factors that should be considered by courts considering anonymity requests."  James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993).  Such factors included:

> [W]hether the justification asserted by
> the requesting party is merely to avoid
> the annoyance and criticism that may
> attend any litigation or is to preserve
> privacy in a matter of sensitive and
> highly personal nature; whether
> identification poses a risk of retaliatory
> physical or mental harm to the requesting
> party or even more critically, to innocent
> non-parties; the ages of the persons whose

---

Roe v. Richmond Metro. Blood Serv., Inc., 22 Va. Cir. 111 (1990).

> privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. Types of cases in which plaintiffs have been permitted to proceed anonymously in other courts in the nation include birth control cases, abortion cases, welfare cases involving illegitimate children, and cases involving issues of homosexuality. See Doe v. Deschamps, 64 F.R.D. 652, 653 (D. Mont. 1974) (citing Roe v. Wade, 410 U.S. 113 (1973) (abortion); Doe v. Gillman, 347 F.Supp. 483 (N.D. Iowa 1972) (child born out of wedlock); Doe v. Chafee, 355 F.Supp. 112 (N.D. Cal. 1973) (homosexuality)).

The limited situations in which a plaintiff has been permitted to proceed under a pseudonym involve "the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record." Doe v. Rostker, 89 F.R.D 158, 161 (N.D. Cal. 1981). A common thread throughout these decisions is that the likelihood of the plaintiff suffering some embarrassment or economic harm is not enough by itself to permit anonymity. Doe v. Goldman, 169 F.R.D. 138, 141 (D. Nev. 1996); Doe v. Hallock, 119 F.R.D. 640, 644 (S.D. Miss. 1987); Doe v. Rostker, 89 F.R.D. at 163; Doe v. Diocese Corp., 647 A.2d

1067, 1071 (Conn. Super. Ct. 1994); A.B.C. v. XYZ Corp. and XYZ Co., 660 A.2d 1199, 1204 (N.J. Super. Ct. 1995).  However, as the Ninth Circuit Court of Appeals noted in Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d at 1070, the proposition that anonymity may never be used to protect against economic harm is "incorrect as a matter of law." Rather, in some instances, the level of retaliation in the form of economic harm may rise to an extraordinary level permitting plaintiffs to proceed anonymously.  Id. at 1071.

Rule 3:3 of the Rules of the Supreme Court of Virginia embraces the normative principle of disclosure and requires the "names" of the parties to be stated in pleadings. However, like other courts that have considered the issue, we recognize that there are certain circumstances when permitting a plaintiff to proceed under a pseudonym must be entrusted to the sound discretion of the trial court.  We are persuaded that the factors considered by the Fourth Circuit in James, while not exhaustive, are appropriate for consideration by state courts in Virginia.  Accordingly, we hold that, upon showing of special circumstances when a party's need for anonymity outweighs the public's interest in knowing the party's identity and outweighs the prejudice to the opposing party, a court may exercise its discretion to allow a party to proceed anonymously.  Further, we recognize that circumstances

17

may change as litigation progresses, thereby requiring reconsideration of initial rulings.

In the case before us, the sole reason APTC has offered in support of its request to proceed anonymously is fear of economic harm. While reasonable concern over potential economic harm is not excluded from factors to consider, APTC has not borne its burden to show special circumstances justifying anonymity.

In its motion to proceed anonymously, APTC claimed that, "the filing of this lawsuit under the proper and correct legal name for the Plaintiff, where Plaintiff at this time is unable to identify the Defendants, will trigger publicity about this lawsuit, which Plaintiff believes will damage the value of the corporation." Later, in a hearing before the trial court, when the attorney for APTC was asked by the court why APTC should not be required to identify itself, the response was:

> [F]or better or for worse, it may not be a good judgment, but my client made a business judgment that it would be extremely harmful to the corporation and to the shareholders of that corporation, which the corporation has a duty to protect, to file a lawsuit in Indiana saying we — and naming yourself — are being defamed. We are having our trade secrets misappropriated. We are being defrauded, and by the way, we can't even tell you, the public, who's doing it.
> My client made the corporate decision in its business judgment — right or wrong — that that would hurt the shareholders.

Significantly, the conclusory nature of APTC's reasons for anonymity does not reveal the degree and nature of the potential economic harm.  APTC would have the trial court trust its decision rather than submit evidence so that an independent judicial evaluation can be made concerning the need for anonymity.

Accordingly, we will reverse the order of the trial court denying the relief sought by AOL and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.