# COURT OF APPEALS OF VIRGINIA

**Record No. 0868-25-3**

JUSTIN DOUGLAS PEERY

v.

COMMONWEALTH OF VIRGINIA

Present: Judges O'Brien, Lorish and Senior Judge Humphreys
Argued at Lexington, Virginia

Opinion Issued April 7, 2026

**FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY**
Christopher B. Russell, Judge

Oliver T. Ward (Rachel L. Yates; Yates Appellate Law, PLLC, on briefs), for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

**PUBLISHED OPINION BY**
**JUDGE ROBERT J. HUMPHREYS**

The circuit court convicted Justin Douglas Peery of two counts of embezzlement because he failed to report and remit lodging and meals taxes to Rockbridge County. The court sentenced Peery to eight years' incarceration, with all but two days suspended. On appeal, Peery asserts that the evidence was insufficient to prove he committed embezzlement. He also claims that the trial court erred by denying his motion for a bill of particulars and by granting the Commonwealth's motions to quash three subpoenas duces tecum. Finding no error, we affirm.

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

Under Code §§ 58.1-3819 and -3833, counties may levy taxes on businesses that offer prepared food and beverages and short-term lodging to customers. In Rockbridge County, such businesses must file separate monthly meals and lodging tax reports with the Commissioner of Revenue and then remit the reported taxes to the Treasurer. Rockbridge County, Va., Code §§ 25-178, -180(E), -193, and -194. The reports list a business's monthly gross receipts for meals and lodging sales and note the tax amount due for that month. When a business is late submitting its reports by a few months, the Commissioner sends the business owner a delinquency notice. If the business owner fails to respond to the delinquency notice, the Commissioner of Revenue issues a summons to the business owner to appear before the Commissioner and address the delinquency. If the business owner does not respond to the summons, the Commissioner either sends the business owner a statutory assessment or refers the matter to the Commonwealth Attorney's Office.

Although it is the business owner's responsibility to report and remit the taxes, lodging software companies VRBO and Airbnb began directly remitting lodging taxes for Rockbridge County businesses to the Treasurer in September 2021 and October 2022, respectively. During the time in question, Airbnb and VRBO remitted taxes to the Treasurer by a lump sum check. Those services did not itemize the businesses for which they were remitting payments to the Treasurer.

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

Peery owned and operated Good Place Farms, LLC, a short-term lodging and catering company in Rockbridge County. He listed his business on and received payments for reservations through VRBO and Airbnb, and on his own website where he processed payments through Square.

On April 6, 2022, the Commissioner sent Peery a delinquency letter, notifying him that he had failed to file tax reports and pay remittances from July 2021 to March 2022.[3] The letter requested that Peery submit meals and lodging tax reports for those months and remit any taxes due. A few weeks later, Peery paid $10,475.39 in meals taxes for his January 2021 to January 2022 gross receipts.

On July 6, 2022, the Commissioner issued a second delinquency letter to Peery for his meals and lodging tax reports and remittances for April to June 2022. After months without a response from Peery, on January 17, 2023, the Commissioner issued him a summons for failing to pay his meals and lodging taxes from April 2022 to November 2022. Per the summons, Peery was to appear before the Commissioner to answer questions under oath regarding his tax liability. A summons is usually the "last step" before the Commissioner refers delinquent business owners to the Commonwealth's Attorney.

On September 23, the Commissioner issued Peery a second summons for failing to pay his meals and lodging taxes from April 2022 to July 2022. The summons ordered Peery to appear before the Commissioner on October 20. On November 3, the Commissioner issued Peery a third summons for failing to pay his meals and lodging taxes from April 2022 through September 2022. The Commissioner later testified at trial that Peery had responded to summonses "[f]or the most part," but "there was at least once that he was a no show."

---

[3] The Commissioner typically sends delinquency letters when a business owner fails to file tax forms for two months in a row.

At some point, the Commissioner prepared a "statutory assessment" for Peery, informing him that he owed the County a particular amount of money.[4]  Then, on March 20, 2023, Peery went to the Commissioner and filed his meals tax reports for April 2022 to February 2023, but did not remit those taxes to the Treasurer.  By May 8, Peery still had not remitted meals or lodging taxes from April 2022 to April 2023, so the Commissioner and the Treasurer referred Peery's debt to the Commonwealth's Attorney.

As of June 2023, Peery had not filed any lodging tax reports with the Commissioner between April 2022 and June 2023.  He filed late meals tax reports for the months of April 2022 through January 2023, as well as a timely February 2023 meals tax report.  In June 2023, Rockbridge County Sheriff's Investigator Travis Patterson contacted Peery regarding late meals and lodging tax filings and remittances for Good Place Farms.  He had not filed his March 2023 or April 2023 meals tax reports by the time Investigator Patterson contacted him.  Peery acknowledged to Investigator Patterson that he was past due on his reports.  He told Investigator Patterson that he had been unable to file the reports on time because he was under house arrest.  Investigator Patterson informed Peery that someone else could file the reports on his behalf.

After his conversations with Investigator Patterson, Peery went to the Commissioner's Office and submitted lodging tax reports for April 2022 through May 2023, as well as the outstanding meals tax reports.  He gave the Treasurer's Office a check for $17,124.56, which covered the business's late meals and lodging tax remittances, as well as some personal property tax payments.  Reservation services VRBO and Airbnb had ostensibly sent lodging tax

---

[4] The Commissioner of Revenue later testified that a statutory assessment was a "tool" used to "get the taxpayer's attention."  To prepare a statutory assessment, the Commissioner of Revenue "double[d]" the taxpayer's liabilities from the previous year.  Where this method overestimated a business owner's tax liability, owners could provide reports to correct the number or prove that the business had closed.

remittances to the Treasurer during this period on Peery's behalf, but as noted above, those services did not distinguish what amounts were for Peery and Good Place Farms.

In July 2023, a grand jury indicted Peery on two counts of embezzlement under Code § 18.2-111. The Commonwealth alleged that Peery's failure to report and remit lodging and meals taxes to Rockbridge County from April 2022 to May 2023 constituted embezzlement under the statute. In February 2024, Peery filed amended reports for his April 2022 to May 2023 lodging taxes. Based on Peery's amended lodging tax reports, the Treasurer issued Peery a refund check for $3,231.

Before trial, Peery moved for a bill of particulars. The trial court denied the motion and noted that the indictments cited the embezzlement statute, gave date ranges for the alleged offenses, and identified Rockbridge County as the purported victim. Peery also sought three subpoenas duces tecum for: 1) the Treasurer's communications with the Rockbridge County Sheriff's Office and the Commonwealth's Attorney's Office regarding Peery and Good Place Farms; 2) the Commissioner's communications with those offices regarding Peery and Good Place Farms; and 3) Peery's amended tax reports and the internal processing notes for those reports from the Commissioner's Office. The Commonwealth moved to quash the subpoenas. Citing *Ramirez v. Commonwealth*, 20 Va. App. 292 (1995), the trial court granted the Commonwealth's motions after it determined that the subpoenaed parties were agents of the Commonwealth regarding the Commonwealth's prosecution of Peery under Rule 3A:11 and Rule 3A:12.

At trial, the Commonwealth introduced Peery's lodging and meals tax reports for the indictment period, which Peery filed with the Commissioner in March and June 2023, as well as the amended lodging reports that he filed in February 2024. Kelly Glass, the Chief Deputy Commissioner of Revenue during the indictment period, testified that Peery came into the

Commissioner's office in June 2023 with an "[E]xcel spread sheet of some documentation" after the Commissioner sent Peery the delinquency notices and summonses. She completed the reports on his behalf. According to Glass, Peery stated in February 2024 that he had to amend his lodging reports because he had been "double paying" remittances that Airbnb and VRBO had already paid. Glass testified that Peery always submitted his reports in-person at the Commissioner's Office and that he claimed he was late filing his reports because he had been under house arrest, although she made clear that a business owner could mail in the tax reports or have a representative file the reports in-person on the business owner's behalf.

David Whitesell, the then-Commissioner of Revenue for Rockbridge County, testified that Peery routinely filed his tax reports late. Whitesell issued summonses for Peery approximately three times a year. Peery usually responded to the summonses. Whitesell issued three summonses for Peery during the indictment period. Peery once told Whitesell over the phone that he was under house arrest and that he was going to have his father file the reports on his behalf, but Peery's father never did so.

Betty Trevado, the then-Treasurer of Rockbridge County, recalled conversations she had with Peery where she emphasized to Peery that the unremitted taxes were the county's property. According to Trevado, Peery told her "that he was going through some personal situations and he had possibly used those funds for a divorce or some other situation that he was having." She stated, "Mr. Peery seemed to indicate he had not set aside funds for the county's payments and that he was having issues with his financial status."

Peery moved to strike the evidence at the close of the Commonwealth's case-in-chief. Specifically, he argued that there was insufficient evidence of fraudulent intent and conversion. He noted that he eventually remitted the taxes due in full and that the Treasurer issued him a refund. The court denied the motion and stated that the evidence supported the

Commonwealth's assertion that Peery wrongfully withheld the meals and lodging taxes contrary to the county's right to collect those taxes.

The court convicted Peery of both counts of embezzlement. It found that Peery had an absolute duty to remit the taxes to the county, but he had not done so. The court sentenced Peery to eight years' incarceration and suspended all but two days of the sentence. Peery appeals, arguing that the evidence was insufficient to show that he wrongfully appropriated the taxes with fraudulent intent. Peery also contends that he was entitled to a bill of particulars and the trial court erroneously quashed his subpoenas.

ANALYSIS

I. Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### A. Conversion

Peery claims that the Commonwealth did not prove that he collected taxes from customers, how much he collected, and where and how he held the money. He points out that the Commonwealth did not introduce bank records, financial ledgers, or any other payment processing information other than the tax reports. In Peery's view, the tax reports were merely estimates of what Peery thought he owed the county and did not represent his actual tax liability. Thus, he concludes that the Commonwealth failed to produce evidence that he appropriated any taxes.

"If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money . . . which he shall have received for another or . . . by virtue of his office, trust, or employment . . . he shall be guilty of embezzlement." Code § 18.2-111(A). The Commonwealth may prove misappropriation or conversion as an element of embezzlement by demonstrating the accused's "[u]nauthorized and wrongful exercise of dominion and control over another's personal property, to [the] exclusion of or inconsistent with rights of the owner." *Evans v. Commonwealth*, 226 Va. 292, 297 (1983). "[P]roof of the misappropriation of property entrusted to the possession of the accused is insufficient, standing alone, to prove that the accused was the embezzler." *Zoretic v. Commonwealth*, 13 Va. App. 241, 243 (1991). But "failure to perform an absolute duty to return the property or refusal to account or pay over on demand constitutes embezzlement, or is, at least, evidence from which a fraudulent conversion may be inferred." *Dove v. Commonwealth*, 41 Va. App. 571, 577-78 (2003) (quoting *Stegall v. Commonwealth*, 208 Va. 719, 722 (1968)). Meals and lodging tax collections are deemed to be held in trust by a business and its owner for the county levying the taxes. Code §§ 58.1-3819(E); -3833(B); s*ee George v. Commonwealth*, 276 Va. 767,

772-73 (2008) (income taxes statutorily held in trust by employers are the property of the Commonwealth).

It is uncontested that Peery failed to timely report most of the meals and lodging taxes collected by Good Place Farms during the indictment periods. The evidence established that Peery's business collected meals and lodging taxes from customers throughout the indictment periods and that Peery withheld over $1,000 in unremitted trust taxes during both of those periods. Indeed, Peery's own meals and lodging tax reports along with his statements to Trevado showed that Good Place Farms garnered gross receipts for meals and lodging services during the indictment periods.

Peery attempts to diminish the weight of his tax reports by casting them as merely his own estimates of his tax liability. Chief Deputy Commissioner of Revenue Glass stated that Peery brought "documentation" to the office in June 2023, which she used to create his initial lodging reports. In February 2024, he returned with more documents for the amended lodging reports to support his assertion that he personally owed the county less because Airbnb and VRBO had remitted taxes on his behalf during the indictment periods. Although the Commonwealth did not introduce documents showing Good Place Farms revenues on taxable services, the tax reports were based on Peery's own documentation of the business's earnings.

Peery's argument is unavailing. Even assuming the reservation services had remitted taxes on his behalf, so he owed the county less, the amended lodging and meals tax reports still showed that he withheld more than $1,000 in unremitted taxes for both indictment periods. For the first indictment period (April through October 2022), Peery owed the county $2,128.62 in unremitted meals taxes alone. For the second (November 2022 through May 2023), he owed $291.52 in meals taxes and $1,018.50 in lodging taxes. Thus, Peery's own reporting established that he had a tax liability of over $1,000 for both indictment periods and that Good Place Farms

had received payments from its customers.  Based on Peery's tax reports and the testimony that on June 15 Peery paid the County $17,125 for his meal and lodging tax obligations from 2022 and 2023, the circuit court could reasonably infer that Good Place Farms received lodging and meals taxes from its customers and that Peery, as owner of Good Place Farms, had control of those funds.

## B.  Fraudulent Intent

Peery also maintains that the Commonwealth's evidence did not prove that he had fraudulent intent.  Particularly, he claims that the Commonwealth did not rule out the plausible explanation that Peery's inability to file his reports or remit the taxes owed on time amounted only to "bookkeeping mistakes," not a fraudulent intent to deprive the county of its right to collect the taxes.  We disagree.

"To constitute embezzlement, fraudulent intent to deprive the owner of his property must be proved beyond a reasonable doubt." *Wells v. Commonwealth*, 60 Va. App. 111, 119 (2012) (quoting *Dove*, 41 Va. App. at 578).  "Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by his statements.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)).  "In determining a defendant's intent, '[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (alteration in original) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

The record demonstrates that Peery knew that he was obligated to remit the taxes to the county but failed to do so.  Trevado specifically told Peery that the money he owed the county was not his property; rather, he held it in trust for the county on behalf of his customers.  She testified that Peery suggested to her that he had not set aside the remittances for the county, that

he was going through personal financial difficulties, and that he had possibly used those funds to address those personal issues. Despite his knowledge, Peery rarely met his obligations on time. Peery often said he was unable to come into the Commissioner's Office to file his reports because he was under house arrest, even though several officers told Peery that he could mail the reports to the Commissioner and payment to the Treasurer or have someone come into the offices on his behalf. He did neither. He did not pay the Treasurer the unremitted taxes until after Investigator Patterson informed him that he might be criminally liable for his late reports and payments.

Even so, Peery claims that it is just as likely that he had bad business and bookkeeping habits as it is that he had fraudulent intent. "[T]he factfinder ultimately remains responsible for weighing the evidence. In that capacity, the factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017). "The pertinent question . . . is whether a rational factfinder, in light of all the evidence, *could* have rejected [the defendant's] theories of innocence and found him guilty beyond a reasonable doubt." *Id.* (emphasis added).

The circuit court could infer from Peery's knowledge that the meals and lodging taxes were not his property, his continued failure to make timely reports or payments, and Trevado's testimony that Peery indicated he had not set aside funds to pay the taxes, that Peery fraudulently intended to keep the tax payments he received from Good Place Farms customers. In its role as factfinder, the trial court could reject Peery's bad business practices explanation as unreasonable where the evidence showed he knew he had an obligation to remit taxes to the county but failed to fulfill that duty.

Peery's continued refrain that he is absolved of guilt by his eventual remittances and the fact that the Treasurer issued him a refund based on his 2024 amendments is unavailing. Later repayment of fraudulently acquired funds does not absolve a person of criminal liability. *See Marsh v. Commonwealth*, 57 Va. App. 645, 651-52 (2011).

## II. Bill of Particulars

On the defendant's motion, a trial court "may direct the filing of a bill of particulars at any time before trial." Code § 19.2-230. "A defendant is not entitled to a bill of particulars as a matter of right." *Paduano v. Commonwealth*, 64 Va. App. 173, 178 (2014) (quoting *Goins v. Commonwealth*, 251 Va. 442, 454 (1996)). A "trial court's decision whether to require the Commonwealth to file a bill of particulars is a matter that rests within its sound discretion." *Swisher v. Commonwealth*, 256 Va. 471, 480 (1998). "Generally, 'where the indictment "give[s] the accused 'notice of the nature and character of the offense charged so he can make his defense[,]' a bill of particulars is not required."'" *Shaw v. Commonwealth*, 79 Va. App. 485, 525 (2024) (alterations in original) (quoting *Rams v. Commonwealth*, 70 Va. App. 12, 42 (2019)). "As long as an indictment sufficiently recites the elements of the offense, the Commonwealth is not required to include all evidence upon which it plans to rely to prove a particular offense." *Id.* (quoting *Sims v. Commonwealth*, 28 Va. App. 611, 619-20 (1998)).

An indictment must be a "plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date." Code § 19.2-220. Generally, "an indictment sufficiently charges a statutory offense if it follows the language of the statute." *Paduano*, 64 Va. App. at 178 (quoting *Sims*, 28 Va. App. at 619). "The decisive consideration in each case is whether the matter claimed to be left out of the indictment has resulted in depriving an accused of a substantial right and subjects

him to the danger of being tried upon a charge for which he has not been indicted." *Id.* (quoting *Ward v. Commonwealth*, 205 Va. 564, 569 (1964)).

Peery argues that the circuit court erred by denying his motion for a bill of particulars. He asserts that the indictments against him were generic and that the Commonwealth's failure to cite the relevant Rockbridge County tax codes in the indictments, or at least state what Peery allegedly embezzled and how, meant that Peery did not have adequate notice of the charges against him.[5] In effect, Peery sought disclosure of details of the Commonwealth's evidence and theory of the case through the mechanism of a bill of particulars. Neither is the purpose of a bill of particulars. *See id.* at 179 ("[T]he Commonwealth is not required to disclose the evidence upon which it planned to rely to prove an element of the offense.").

The indictments gave Peery notice of the charges against him. Each indictment named Peery as the accused, alleged that he committed embezzlement against and in Rockbridge County, and listed date ranges for the alleged crimes. Each indictment also cited Code § 18.2-111 and included the statutory definition of embezzlement under the statute. The Commonwealth was not required to list the Rockbridge County tax provisions it alleged Peery had violated, what Peery allegedly embezzled, or how he embezzled the allegedly misappropriated property. Under Code § 19.2-223, "it shall be sufficient to allege the embezzlement or fraudulent conversion to be of money without specifying any particular money." The indictments here satisfied that requirement, and the circuit court did not err in denying the motion for a bill of particulars.

---

[5] Peery also claims that the indictment periods were for broader time frames than allowed under Code § 19.2-223. He did not raise this issue in the circuit court, and he has not invoked the good cause or ends of justice exceptions, so we do not address it here. Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

III. Subpoenas Duces Tecum

"[W]e review a trial court's decision regarding a motion to quash the issuance of a subpoena *duces tecum* 'under an abuse of discretion standard.'" *Schwartz v. Commonwealth*, 45 Va. App. 407, 450 (2005) (quoting *Am. Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350, 359 (2001)). "Although we review a ruling on discovery for abuse of discretion, a lower court's interpretation of a statute or the rules of the Supreme Court of Virginia presents a question subject to *de novo* review on appeal." *Patel v. Rabinowitz ex rel. Lakhani Assocs., LLC*, 75 Va. App. 663, 670 (2022) (quoting *Nimety v. Commonwealth*, 66 Va. App. 432, 437 (2016)).

A court may issue a subpoena duces tecum allowing a defendant to obtain "writings or objects [that] are material to the proceedings and are in possession of a person not a party to the action." Rule 3A:12(b)(1). But "a subpoena duces tecum [may not] be used to obtain material from an agency or entity participating in, or charged with responsibility for, the investigation or prosecution of a criminal case such that the agency and its employees are deemed agents of the Commonwealth." Rule 3A:12(i). When a court quashes a subpoena duces tecum because it is directed to an entity that is an agent of the Commonwealth, "discovery will be governed by Rule 3A:11 and orders issued pursuant to that Rule." *Id.*

The circuit court quashed Peery's subpoenas duces tecum after it found that the Commissioner of Revenue and Treasurer had participated in the investigation and prosecution of Peery and thus were agents of the Commonwealth for Peery's prosecution under our analysis in *Ramirez v. Commonwealth*, 20 Va. App. 292 (1995). In *Ramirez*, we held that Department of Social Services employees were not subject to a subpoena duces tecum where they were involved in the investigation of the defendant and thereby became agents of the Commonwealth and a party to the case. 20 Va. App. at 297. Rule 3A:12(i), which became effective in 2020, adopts our earlier holding.

The record is clear that the Commissioner of Revenue and Treasurer participated in the investigation and prosecution of Peery's case. Those offices referred the matter to the Rockbridge County Sheriff and Commonwealth's Attorney and furnished the investigators and prosecutors with the materials that constituted the entirety of the Commonwealth's case-in-chief. Therefore, the Commissioner, Treasurer, and their employees were agents of the Commonwealth regarding Peery's case, and the court did not err by quashing the subpoenas. Rule 3A:12(i). Although we base our ruling on the plain meaning of Rule 3A:12(i) rather than our holding in *Ramirez*, we reach the same result as the circuit court. *See Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020) ("Under the right-result-different-reason principle, an appellate court 'do[es] not hesitate, in a proper case, where the correct conclusion has been reached but [a different] reason [is] given, to sustain the result [on an alternative] ground.'" (alterations in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)). Also, Peery had the opportunity to file a discovery motion in the circuit court seeking the requested documents under Rule 3A:11 after the court quashed the subpoenas duces tecum, as Rule 3A:12(i) states, but he elected not to do so.[6]

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[6] Although Peery now claims that the court should have conducted an in camera review of the requested documents, modified the subpoenas, or imposed protective orders, he made none of these requests below. He only challenged the court's assertion that the Commissioner and Treasurer were agents of the Commonwealth. Thus, he has not preserved these arguments for appeal. Rule 5A:18.